OLIVER KING SAND & LIME CO. v. W. H. STERCHI, et al.

Eastern Section. February 11, 1928.

L. C. Ely, Donaldson & Montgomery, of Knoxville, for appellant.

J. Bailey Wray, Lindsay, Young & Young and Smith, Carlock, Poor & Eagle, of Knoxville, for appellee.

HEISKELL, J. This is a bill filed by Oliver King, doing business as the Oliver King Sand & Lime Company, to enforce a lien for material furnished to R. S. Dysart, who had a contract from W. H. Sterchi, to be used in constructing a building on a lot owned by said Sterchi in the City of Knoxville.

Sterchi filed an answer and cross-bill, the purpose of the cross-bill being to bring in the New York Indemnity Company, which Sterchi alleges issued to him a policy to protect him from any default of the contractor Dysart. The Chancellor held that the notice given by complainant King to defendant Sterchi was given more than thirty days after the delivery of the last material delivered by King on this contract, and before the building was completed and that therefore the complainant had fixed no lien on the real estate belonging to Sterchi.

The bill of complainant was dismissed and the court held that there was nothing for the cross-bill to take effect upon, and this was also dismissed. Both parties appealed, but Sterchi appeals merely in order to preserve his right against the Indemnity Company, in case the action of the Chancellor should be reversed and a decree rendered against him in favor of King.

Complainant's assignments of error insist that the Chancellor erred in holding that his notice to Sterchi was not in time to fix a lien on the property under Code Sec. 3540. It is conceded by defendant Sterchi that but for the failure to give notice in the time required by the statute, complainant would be entitled to a decree. On the other hand, it is admitted by complainant that no notice was given after the completion of the building. That the last material furnished by complainant was delivered on July 13, 1926, and that the notice to Sterchi was given on August 14, 1926, but complainant insists that the contractual relation between him and Dysart did not terminate upon July 13th, at the time of the delivery of the last material for the building and did not terminate until about July 25th, and that his notice to Sterchi was given within thirty days of this time.

The original bill of complainant, after alleging the contract of R. S. Dysart with Sterchi and that Dysart did erect the building on the property described, says:

"... and the complainant furnished the said Dysart a large amount of building material, including sand, lime and

cement, all of which amounted to five hundred forty-one and 40/100 dollars ($541.40), which was used in the construction and improvement of the above-described property, the last item having been furnished on July 13, 1926.

"Complainant further shows to the court that within thirty days of the completion of the contract by the said Dysart he served written notice upon the defendant W. H. Sterchi, setting forth the above facts and claiming a lien on the above-described property on account thereof, in accordance with the Statutes in such cases made and provided."

This bill was filed November 12, 1926. On June 11, 1927, complainant was allowed to amend his bill by striking out the words,

"That within thirty days of the completion of the contract by the said Dysart," and substituting therefor the following:

"That within thirty days of the termination of the contractual relationship existing between the complainant and said Dysart for the furnishing of materials on the said property belonging to the defendant Sterchi."

King says there was no time fixed in his contract with Dysart for the delivery of the material; it was to be delivered just as Dysart ordered it. He says he told Dysart some time after the last delivery on July 13, 1926 that he could not furnish him any more material until he paid his account. This he called severing his contractual relations with him.

There is nothing to show that Dysart ordered any material which he did not get, or that he got any such material as complainant handled from any one else, or that he needed any more material after complainant's delivery of July 13th.

King says that Agee had charge of the notice and that Alexander had charge of collections for him and the depositions of both these employees are taken.

An excerpt from Agee's testimony is:

"Q. Do you remember when Mr. King, if he did so, terminated the relationship between Dysart and himself on this job? A. He had Alexander on the job to collect off of Dysart and I heard him tell him he knew Dysart had gotten estimates on that work and he wanted some money and that was after he had furnished the last material.

"Q. Do you remember how many days afterwards? A. Just a few days, possibly ten or fifteen days after that.

"Q. Did Mr. King then close the purchasing account of Dysart at that time until he got some money? A. He told Alexander something about he would just have to have some money or have to quit furnishing any stuff, something to that effect. I do not remember the exact, but he said he was going to stop.

"Q. And that was ten or fifteen days after July 13th, when the last bill was furnished. A. Yes.

"Q. At that time had you picked up the sacks? A. No, we got notice from Dysart to go to what we described to ourselves as Fifth avenue and Gay street Sterchi Apartment and get all the empty bags that we had sent and the material left and when our man went on the job the plasterer of the job or the plasterer's helper was there and told our men that they could not have the sacks, that they belonged to Gilbert and we did not want to have a scrap with the men on the job, so our men turned around and went back.

"Q. Was that before or after you gave your notice? A. Before.

"Q. How many days before? A. It was along about the same time that he told Alexander to get some money. Along about the same time.

"Q. Was it after July 13th? A. Yes.

"Q. How many days do you think it was? A. I would say roughly about ten days."

Alexander's testimony on this subject is as follows:

"Q. Do you remember the job that Dysart was building for Sterchi on King street? A. Yes, sir.

"Q. Do you remember a conversation that Mr. King had with you about the Dysart account? A. Yes.

"Q. Did he or not close the account to Dysart or decline to allow Dysart to purchase any more material on the account? A. I cannot say exactly about that. He notified him about that.

"Q. Do you remember when that was? A. Along about the time the plastering was done.

"Q. Do you know when it was with reference to August 14, 1926, when the notice was given? A. Mr. Agee and Mr. King handled that. I don't know about that."

There is only one way to construe this testimony. On the 13th of July complainant delivered the last material in his line, which Dysart needed, to complete the building. This is clear from Agee's testimony, that a few days later he went out to the building, according to custom, to gather up the material left over, in order to credit it on the account. If Dysart needed any more material in this line there would not be anything left over of the material delivered by complainant. Evidently it was in complainant's mind, when the original bill was filed, that the last delivery of material on July 13th completed the contract to deliver material to Dysart for the construction of this building, and the allegations of the amendment some months later was an afterthought. All that took place after July 13th, we think, was that King sent word to Dysart

by Alexander that he would not furnish him any more material unless he paid. We think this did not refer to the material for this building but to Dysart personally with reference to the future.

Complainant insists that his contract was not terminated because it was customary to gather up the empty sacks and give credit for them. We do not see, from the evidence, that these sacks were ever picked up. If this is to be the test of the termination of the materialman's contract, he can prolong it indefinitely.

The construction given to Code Sec. 3540 seems, in a case of this sort, to fix the date of the last delivery of material as the date from which the thirty days allowed to give notice shall be computed.

"A notice served by the furnisher of materials upon the owner of the property is void if served more than thirty days after the last material is furnished, and before the completion of the building. Two periods are fixed by the statute for the service of such notice. Thirty days after the last material is supplied and thirty days after the building is completed. If given more than thirty days after the last material is furnished it is too late and falls without the first period. If given before the building is completed it is premature, and is without the last specified period." (Cole Mfg. v. Falls, 96 Tenn., 60; Bird Bros. v. Southern Surety Co., 139 Tenn., 16).

There is an attempt on the part of the complainant to set up an estoppel against defendant Sterchi on the allegation in the amendment of June 11, 1927, that he admitted to Alexander that the notice was given in time. The only witness for complainant, on this point, is Alexander, and Sterchi denies that he said any such thing. So it might be said that complainant had failed to carry the burden of proof. But if we take as true what Alexander says, we do not think this would estop Sterchi to demand proof of notice given in compliance with the Statute. Alexander says Sterchi "mentioned the fact two or three times that Oliver King was safe, that he got his notice in in time, but that A. G. Heins and some others did not." Suppose Sterchi did say that, and was mistaken, would it bind him? He might have been in error as to the time allowed or as to the date of notice and of last delivery of material.

It is true Alexander says complainant relied on this admission of Sterchi and therefore did not give the notice after completion of the building. We think the testimony taken in connection with the original bill shows there was no reliance on any admissions of Sterchi. Complainant had no right to rely on Sterchi to keep count of the time for him and Sterchi was under no obligation to do so. Certainly no attention to mislead could be attributed to Sterchi.

We find no error in the decree of the Chancellor in dismissing complainant's bill. As a matter of course, then the cross-bill of defendant Sterchi was properly dismissed. All assignments of

652

error are overruled and the decree of the lower court is affirmed. Complainant and sureties on appeal bond will pay the costs of appeal.

Owen and Senter, JJ., concur.