JOHN WILLIAM PROVINCE and JOHN WATSON PROVINCE, Partners Under the Firm Name of SOUTHERN FUEL and LUMBER COMPANY, Appellees, v. MRS. MARTHA MITCHELL, Appellant. —312 S. W. (2d) 861.

Western Section, Jackson. March 27, 1958.

Certiorari denied by Supreme Court May 2, 1958.

Aaron C. Brown, Paris, for appellant.

Dudley Porter, Paris, for appellees.

BEJACH, J. ▉ This cause involves an appeal by Mrs. Martha Mitchell, who was defendant in the Chancery Court of Henry County, Tennessee, from a decree of that Court rendered against her in the sum of $1,-486.57, together with interest thereon, in favor of the appellees, John William Province and John Watson Province, partners d/b/a Southern Fuel and Lumber Company. For convenience, the parties will be referred to, as in the lower court, as complainants and defendants, or called by their respective names.

The bill in this cause was filed September 20, 1956. As originally filed, Gayle Mitchell, husband of defendant Martha Mitchell, was also made a defendant. The bill sought a recovery from both defendants in the sum of $1,486.57 for improvements constructed on property of said defendants under a special contract, and sought a lien on their property under the provisions of Section 64-1102, T. C. A., which provides:

"There shall be a lien upon any lot of ground or tract of land upon which a house or structure has been erected, demolished, altered, or repaired, or for fixtures or machinery furnished or erected, or improvements made, by special contract with the owner or his agent, in favor of the contractor, mechanic, laborer, founder or machinist, who does the work or

any part of the work, or furnishes the materials or
any part of the materials, or puts thereon any fix-
tures, machinery, or material, and in favor of all per-
sons who do any portion of the work or furnish any
portion of the materials for such building.''

A fiat for the attachment was signed by Hon. E. J.
Carter, County Judge of Henry County, and the writ of
attachment as well as process against both defendants
was duly issued by the Clerk and Master. Demurrers
were filed by both defendants. That of Gayle Mitchell
was sustained, on the ground that the property involved
belonged to Mrs. Martha Mitchell and, consequently,
that he was not a proper party defendant. The demurrer
of Mrs. Martha Mitchell was, however, overruled and
she filed her answer denying all material allegations of
complainants' bill relating to a special contract or any
contract, directly or indirectly. Along with her answer,
she filed the letter and statement received by her from
complainants, which statement purported to be an item-
ized account of her bill with complainants. Also, along
with her answer, she tendered into court the sum of
$1,061.78, which she claimed, and still claims, was the
reasonable value of the work and materials furnished
for repairing her premises, and which she contends is
the maximum amount that complainants are entitled to
recover. The Chancellor ruled, however, in favor of the
complainants and held that they were entitled to recover
the sum of $1,486.57, together with interest thereon from
the date of filing the bill in this cause in the amount of
$98.11, making a total of $1,584.68, for which sum a de-
cree was entered against defendant, Mrs. Martha Mitch-
ell. It is from this decree that she has prayed and per-
fected her appeal to this Court.

The testimony in this cause was taken by depositions. There is very little conflict in the testimony as to the facts of the case, the main controversy being as to inferences and conclusions to be drawn from the proven facts. The material facts were as follows:

On or about March 24, 1956, Mrs. Martha Mitchell was the owner of a piece of real estate located on Irvine Street in the city of Paris, Henry County, Tennessee, upon which was erected a dwelling which was rental property, and on which she carried a policy of insurance in the Columbia Insurance Company, issued through the agency of Mrs. T. Joe Smith of Paris, Tennessee. On said date, a fire partially destroyed the building on Mrs. Mitchell's property. This fire was promptly reported, and on the same day, Mr. W. T. Lowry of Jackson, Tennessee, an adjuster for the Columbia Insurance Company, came to Paris, Tennessee to investigate the matter. In the presence of Mr. Mitchell, Mr. Lowry requested Mr. John Watson Province to make an estimate of the amount for which he would furnish the materials and do the work necessary to repair the damage done by the fire. This, Mr. Province was unwilling to do at that time, but he said he would prepare such estimate and submit it later. Mr. and Mrs. Mitchell, as well as Mr. Lowry, were anxious to have the work begun immediately, and especially that the roof be promptly replaced, so as to prevent additional damage to the premises. Mr. Province agreed to and did begin work promptly, although his estimate was to be prepared and submitted later. At the time of the fire, John Watson Province was the sole owner of the Southern Fuel and Lumber Company. Subsequently, but prior to the filing of suit

in this cause, he sold a half interest in the business to his father, Mr. John William Province.

When the estimate promised by Mr. John Watson Province was prepared, it was submitted to Mr. Lowry but not to either Mr. or Mrs. Mitchell, although, in the meantime, the work had been going on with the approval of and with occasional suggestions as to details from Mr. and Mrs. Mitchell. Neither Mr. Lowry, nor either of the Messrs. Province claim that the amount of this estimate which was in the sum of $1,486.57 was ever expressly approved by either Mr. or Mrs. Mitchell. It was, however, made the basis of the settlement which Mrs. Mitchell made with the insurance company, and after deducting the sum of $99.94, representing depreciation and because the new roof installed was better than the one which had burned, the sum of $1,386.63 was paid to Mrs. Mitchell in settlement of her fire loss. Mrs. T. Joe Smith, agent of the Columbia Insurance Company who delivered the check for $1,386.63 to Mrs. Mitchell, was offered as a witness for complainants. As part of her testimony, she was asked a question, which she answered, as follows:

"14. Q. State whether or not she said she would endorse that check and send it over to Mr. Province and pay the difference in that check and the amount she owed Mr. Province? A. She probably said it, and if she did I thought she meant it. I gave it to her because it was her property."

This question and answer were objected to at the time, and Mrs. Mitchell, in her testimony, positively denied that she had made any such promise or agreement. In that situation, with the burden of proof on complainants,

they were certainly not entitled to a finding of fact, based on that testimony, that Mrs. Mitchell had agreed to pay to complainants the sum of $1,484.68.

As appellant, Mrs. Mitchell has filed in this Court six assignments of error which are as follows:

## "Assignments of Error

### "Assignment No. I.

"The Court erred in overruling the demurrer of the defendant, Mrs. Martha Mitchell, because the allegations therein were not sufficient for an alleged contract, nor were they such that would warrant the Court to render the relief sought in the prayer thereof.

### "Assignment No. II.

"The Court erred in sustaining the bill and sustaining a special contract, which never existed nor was ever proved by the testimony in this record.

### "Assignment No. III.

"The Court erred in decreeing a judgment for the complainant and against the defendant in the sum of Fourteen Hundred Eighty-six Dollars and Fifty-seven ($1486.57) Cents.

### "Assignment No. IV.

"The Court erred in failing to recognize the tender in the amount of One Thousand Sixty-one Dollars and Seventy-eight ($1,061.78) Cents as being the reasonable value of the work done by complainant on defendant's property.

## "Assignment No. V.

"The Court erred in sustaining the attachment prayed for in said bill and ordering said property sold for the satisfaction of the judgment in the amount of Fourteen Hundred Eighty-six Dollars and Fifty-seven ($1486.57) Cents.

## "Assignment No. VI.

"The Court erred in decreeing interest on the amount of Fourteen Hundred Eighty-six Dollars and Fifty-seven ($1486.57) Cents from the date of the filing of the bill herein."

We will treat these assignments of error, as did able counsel for the appellant, by first disposing of Assignment of Error Number I, and then discussing and disposing of the other assignments of error collectively.

By Assignment of Error Number I, defendant contends that the allegations of complainants' bill as to the existence of a special contract are so vague, indefinite and uncertain that the demurrer of defendant, Martha Mitchell, should have been sustained. On the other hand, counsel for complainants contends that the language of the bill in this cause conforms to the model or form set out in Section 1039 of Gibson's Suits in Chancery (1929 Ed.), which is Section 1086 of the 5th Edition of 1956.

We feel constrained to agree with complainants' counsel as to this aspect of the case, and we hold that the learned Chancellor did not err in overruling the demurrer of Mrs. Martha Mitchell. Assignment of Error Number I is accordingly overruled.

Assignments of Error II, III, IV, V, and VI, whether considered separately or as a group, question the correctness of the Chancellor's ruling that the proof in this cause established a special contract between complainants and defendant, Mrs. Martha Mitchell, which entitled complainants to recover $1,486.57; and, conversely, maintain that the Chancellor erred in rejecting her tender of $1,061.78 and in sustaining the attachment against her property.

It is apparent to us, that complainants' case must stand or fall, depending on whether or not the evidence establishes a contract between complainants and Mrs. Mitchell for a turn-key job at and for the sum of $1,486.57. It is equally clear to us that the evidence in the record before us fails to establish such a contract. As is stated in Note Number 2 of the annotations under Section 64-1102, T. C. A.:

"While the words 'special contract' are construed to mean nothing more than an employment and undertaking to do the work or to furnish the materials, there must be a contract, which implies the mutual assent of persons competent to contract. Barnes v. Thompson (1852), 32 Tenn. 313; Alley v. Lanier (1860), 41 Tenn. 540; McLeod and McGrath v. Capell (1874), 66 Tenn. 196; O'Malley v. Coughlin (1877) 3 Cooper's Tenn. Ch. 431; Mills v. Terry Mfg. Co. (1892), 91 Tenn. 469, 19 S. W. 328; Reed v. Estes (1904), 113 Tenn. 200, 80 S. W. 1086; McDonald v. Cady (1928), 9 Tenn. App. 354."

On behalf of complainants it is contended, as stated in their counsel's brief, "Though an assent to an offer is requisite to the formation of a contract or an agree-

ment, such assent is a condition of mind, and may be either expressed or merely evidenced by circumstances'', for which they cite as authority the case of Cole-McIntyre-Norfleet Co. v. Holloway, 141 Tenn. 679, 214 S. W. 817, 7 A. L. R. 1683.

■ Applying the principle of that decision to the facts of the instant case, we think there was an implied obligation on the part of Mrs. Mitchell to pay to complainants the reasonable value of the materials and labor furnished in repairing her property; but this falls short of establishing an agreement to pay any specific sum for a turn-key job. There can be no doubt that Mrs. Mitchell authorized and approved the doing of the repair work on her property by complainants, and she testified that she was entirely satisfied with the quality of the work done, but this falls short of establishing a contract between her and complainants for a turn-key job at and for the specific sum of $1,486.57.

■ On behalf of complainants, it is contended that the acceptance and approval of their estimate in that amount by Mr. W. T. Lowry, followed by Mrs. Mitchell's settlement with Mr. Lowry on the basis of that estimate, establishes such contract. They contend that Mr. Lowry was the agent of Mrs. Mitchell, that Mr. Mitchell, her husband, was also her agent, and that somewhere along the line, because of such agency, Mrs. Mitchell became obligated to pay to complainants the amount of the estimate submitted to and approved by Mr. Lowry. We cannot agree with this contention. Mr. Lowry was not the agent of Mrs. Mitchell, but was the agent of the Columbia Insurance Company which had a substantial interest in the matter, and there is no testimony in the record to

the effect that Mr. Mitchell, whether or not he was the agent of his wife, ever said or did anything which either approved complainants' estimate of $1,486.57 or obligated Mrs. Mitchell to pay same. This estimate was not submitted to Mr. Lowry until several weeks after the fire, and after most of the work had already been done; and the fact that the insurance company settled with Mrs. Mitchell on the basis of that estimate, after making an adjustment and deduction therefrom on account of the roof, cannot cause Mr. Lowry to be considered Mrs. Mitchell's agent nor indicate any promise on her part to pay to complainants the amount of that estimate.

■■ If then, as we hold, there was no express contract for a turn-key job, at and for the sum of $1,486.57, the only obligation which Mrs. Mitchell was under was that imposed by law, which was to pay on a quantum meruit basis or as the result of an implied contract to pay the reasonable value of the material and labor furnished by complainants. What, then, is the reasonable value of such labor and materials? According to the statement furnished defendant, Mrs. Mitchell, and the testimony in the record, the actual amount paid by complainants for labor was $503.65, and complainants' statement shows an item entitled "Profit and Overhead" in the amount of $133.66, which amount defendant is willing to concede as being reasonable, and has included in the amount of her tender. The $1,486.57 estimate includes an item of $928.44 for labor. It is therefore apparent that, unless complainants are entitled to recover on the basis of a contract for a turn-key job, they have undertaken to charge Mrs. Mitchell $424.79 for labor in excess of the amount actually paid by them for such labor. This, we think they were not entitled to do; and, consequently, we

hold that the Chancellor should have required complainants to accept defendant's tender and should have entered a decree against defendant for that amount, only, together with the costs accrued.

The effect of defendant's tender, which we hold should have been accepted, was to relieve defendant of the obligation to pay interest after refusal of said tender. As was said by Deaderick, J., speaking for the Supreme Court of Tennessee in the case of Gracy v. Potts, 63 Tenn. 395, 396-397:

"The question chiefly discussed is, the effect of the alleged tender.

"Assuming that no objection was made to the time at which it was made, or that it might have been effectively made on the 15th November, 1862, in the currency offered, we are of opinion its only effect would be to discharged the debtor from liability for interest and costs of any suit subsequently instituted. It would not discharge the debtor from liability for the debt."

On behalf of complainants it is contended that since the amount tendered was only $1,061.78, which is less than the amount sued for, $1,486.57, the tender was wholly ineffectual, their contention being that a valid tender must be for the full amount sued for. In support of this contention, they cite the cases of Cross v. Sells, 48 Tenn. 83, 85; and the case of Alloway v. City of Nashville, 88 Tenn. 510, 530, 13 S. W. 123, 8 L. R. A. 123. Neither of these cases sustains the contention of complainants, nor do we think such contention is the law of Tennessee. Such contention was good, so far as the

decree of the lower court is concerned, because that decree was for a larger sum than the amount tendered, and would be good in this Court if we should affirm the decree of the lower court or should enter a decree for any amount in excess of $1,061.78. As to the costs of the lower court, those costs, or at least most of them, had already accrued before the tender was made, and we therefore hold that the tender did not relieve Mrs. Mitchell of liability for costs of the cause.

Our conclusion is that Assignments of Error II, III, IV, V, and VI must be sustained. It follows that the decree of the Chancery Court of Henry County will be reversed. A decree may be entered in this Court against defendant, Mrs. Martha Mitchell, in favor of complainants, John William Province and John Watson Province, partners under the firm name of Southern Fuel and Lumber Company, for the sum of $1,061.78 tendered into court, together with the costs of the lower court. Said decree will dissolve the attachment on Mrs. Mitchell's property. The costs of the appeal will be adjudged against the complainants, John William Province and John Watson Province.

Avery, P. J. (Western Section) and Carney, J., concur.