**In re Pasquale DiCAMILLO, Debtor.**

**Bankruptcy No. 95–10730SR.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Aug. 31, 1995.

Mary Jeffrey, Philadelphia, PA.

Joseph Wilkes, I.R.S., Philadelphia, PA.

Frederick L. Reigle, Standing Chapter 13 Trustee, Reading, PA.

### OPINION

STEPHEN RASLAVICH, Bankruptcy Judge.

This matter comes before the Court upon the objection of the Debtor, Pasquale Di-Camillo (the "Debtor"), to a certain proof of claim filed in this Chapter 13 case by the Internal Revenue Service ("IRS"). At issue is whether the pendency of a prior bankruptcy proceeding served to toll the 240 day priority period for assessed income taxes as set forth in 11 U.S.C. § 507(a). A hearing was held on August 11, 1995. For the reasons which follow, the Debtor's objection to the IRS claim will be overruled.

### Background

The essential facts are not in dispute. On June 8, 1992, the IRS assessed income taxes for the year 1988 against the Debtor. One hundred fifty seven days later, on November 12, 1992, the Debtor filed a petition under Chapter 13 of the Bankruptcy Code. The Debtor's Chapter 13 case was dismissed on October 14, 1994. Within six months, on January 31, 1995, the Debtor filed the instant Chapter 13 case.

The IRS filed a proof of claim in May 1995. In its claim, the IRS contends that the sum of $5,350.86 should be classified as a priority tax claim for unpaid income taxes for the years 1988 and 1989.[1]

### Contentions of the Parties

The Debtor objects to the allowance of the 1988 taxes as a priority obligation. Quite simply, the Debtor contends that 11 U.S.C.

1. The IRS effectuated an assessment against the Debtor for unpaid 1989 income taxes on May 1, 1995. At the hearing held on August 3, 1995, the Debtor informed the Court that his objection to the assessment for 1989 income tax liability had been withdrawn.

2. "(a) The following expenses and claims have priority in the following order: ...
   (8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—

§ 507(a)(8)(ii) accords priority to income taxes only if the tax was assessed within 240 days of the filing date.[2] Hence, the Debtor claims that since the IRS assessed income taxes for the year 1988 against him on June 8, 1992, the plain language of § 507(a)(8)(ii) bars the IRS from obtaining priority status on the 1988 tax liability because he filed his instant Chapter 13 case on January 31, 1995, more than 240 days after the IRS effectuated the assessment against him.

The IRS, on the other hand, argues that, read together, the Bankruptcy and Internal Revenue Codes, specifically § 108(c) of the Bankruptcy Code and § 6503(h) of the Internal Revenue Code ("IRC"), suspended § 507(a)(8)(A)(ii)'s 240 day priority period from the time the Debtor filed his bankruptcy in November 1992, until six months after the case was dismissed. If the IRS's position is correct, its unsecured claim against the Debtor for 1988 income tax liability is entitled to priority treatment in the instant case.

The Debtor contends that § 108(c) does not operate to allow the suspension period of IRC § 6503(h) to apply to the 240-day collection period of § 507(a)(8)(A)(ii).

### Discussion

The IRS relies on Bankruptcy Code § 108(c), which provides in relevant part:

... [I]f *applicable nonbankruptcy law* ... fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor ... and such date has not expired before the date of the petition, then such period does not expire until the later of—
(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case.

(A) a tax measured by income or gross receipts—

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax was made within 240 days after such assessment was pending, before the filing of the petition.
11 U.S.C. § 507(a)(8)(A)(ii).

11 U.S.C. § 108(c) (emphasis added). This section extends the statute of limitations for creditors in actions against the debtor, where the creditor is hampered from proceeding outside the bankruptcy court due to the provisions of 11 U.S.C. § 362. *Brickley v. United States (In re Brickley)*, 70 B.R. 113 (9th Cir. BAP 1986) (citation omitted).

The IRS additionally relies on IRC § 6503(h), which provides in relevant part:

> The running of the period of limitations ... on the making of assessments or collections shall, in a case under [the Bankruptcy Code], be suspended for the period during which the [IRS] is prohibited by reason of such case from making the assessment or from collection ... and [for] 6 months thereafter.

26 U.S.C. § 6503(h)(2).

There is universal agreement among the authorities relied upon by the parties that IRC § 6503 is "an applicable nonbankruptcy law" within the meaning of § 108(c). *See, e.g. In re Turner*, 182 B.R. 317, 324 (Bankr. N.D.Ala.1995). The Debtor, however, cites the Court to a number of decisions wherein courts have determined that even though IRC § 6503(h) is one of those applicable nonbankruptcy laws, neither the plain language of § 108(c), IRC § 6503, nor the legislative history to those sections, refer to § 507, but instead § 108(c) and IRC § 6503 refer to nonbankruptcy periods of limitation. *Id.; see also, In re Gore*, 182 B.R. 293 (Bankr.N.D.Ala.1995); *Matter of Quenzer*, 19 F.3d 163 (5th Cir.1993). Hence, Congress did not intend that one bankruptcy case should have an effect on the priority of taxes in a subsequent bankruptcy case. *See Turner*, 182 B.R. at 324–25.

■ While the Court recognizes the apparent validity of the above "plain language" approach, the majority of courts have deter-mined that incorporation of the suspension provisions of the IRC through § 108(c) is appropriate to protect the government's interests, rather than adopting the plain language approach which would frustrate the Bankruptcy Code's intricate scheme for the payment of tax claims.[3] *See In re West*, 5 F.3d 423, 427 n. 9 (9th Cir.1993) (collecting cases); *see also, Turner*, 182 B.R. at 325 n. 4 (collecting cases) (recognizing that a majority of courts have incorporated the suspension provisions of the IRC through § 108(c); *In re Brickley, supra* (incorporating IRC § 6503 through § 108(c)).

As explained by the Ninth Circuit Court of Appeals in *In re West*:

> Section 507(a) creates a "delicate balance" between priority and discharge of tax claims. *In re Official Comm. of Unsecured Creditors of White Farm Equip. Co.*, 943 F.2d 752, 757 (7th Cir.1991), *cert. denied*, 503 U.S. 919, 112 S.Ct. 1292, 117 L.Ed.2d 515 (1992).[4] The statute's legislative history reveals that, as part of this balance, "Congress intended to give the government the benefit of certain time periods to pursue its collection efforts." *United States v. Richards (In re Richards)*, 994 F.2d 763, 765 (10th Cir.1993). "[T]he tax collector should not lose taxes which he has not had reasonable time to collect or which the law has restrained him from collecting." S.Rep. No. 989, 95th Cong., 2nd Sess. 14 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5800.

*Id.*, 5 F.3d at 426.

Recognition that § 108(c) incorporates the suspension periods of IRC § 6503 supports a policy determination by Congress that the government should be given the benefit of statutorily defined periods to collect taxes. *See id.* The relevant legislative history of § 108(c) is clear on this point:

---

3. It is well-settled that "in rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters ..., the intention of the drafters, rather than the strict language controls." *United States v. Ron Pair Enters.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)).

4. For example, priority tax claims are not discharged in a Chapter 13 case until paid in full. 11 U.S.C. §§ 1322(a)(2), 1328. Nonpriority claims, however, may be discharged upon prorata payment with general, unsecured claims. 11 U.S.C. § 1328.

In the case of Federal tax liabilities, the Internal Revenue Code suspends the statute of limitations on a tax liability of a taxpayer from running while his assets are in the control or custody of a court and for 6 months thereafter.... The amendment applies this rule in a [bankruptcy case]. Accordingly, the statute of limitations on collection of nondischargeable Federal tax liability of a debtor will resume running 6 months following the end of the period during which the debtor's assets are in the control or custody of the bankruptcy court. This rule will provide the Internal Revenue service with adequate time to collect non-dischargeable taxes following the end of title 11 proceedings.[5]

S.Rep. No. 989, 95th Cong., 2nd Sess. 30–31 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5816–17.

In light of the foregoing, this Court agrees with the majority of courts that incorporation of the suspension provisions of the IRC through § 108(c) is appropriate to protect the government's interests during the pendency of a bankruptcy case. Pursuant to IRC § 6503(h), a bankruptcy case suspends the running of the 240–day period of § 507(a)(8)(A) from the date of the bankruptcy petition until six months after the case is dismissed.

The Court also recognizes that an unacceptable result would inure to the benefit of debtors if the Debtor's position were correct: a unique scheme of tax avoidance would be available to Chapter 13 debtors who could stop IRS collection efforts by filing a bankruptcy petition, wait for § 507(a)(8)(A)'s priority period to expire, dismiss the case shortly thereafter and then refile. *In re West,* 5 F.3d at 426 (citing *Florence v. IRS (In re Florence),* 115 B.R. 109, 111 (S.D.Ohio 1990); *see also, In re Grogan,* 158 B.R. 197 (Bankr. E.D.Cal.1993); *In re Brickley, supra.*

**Conclusion**

The Debtor's initial Chapter 13 case suspended the running of § 507(a)(8)(A)(ii)'s 240 day priority period from the time the Debtor filed his bankruptcy in November 1992, until six months after the case was dismissed on October 14, 1994. Since the Debtor's instant Chapter 13 case was filed within the following six months, the IRS claim for 1988 income tax liability is entitled to priority. Accordingly, the Debtor's objection will be overruled.

---

**5.** As already noted, the only way to discharge priority debt through a Chapter 13 case is to pay the claim in full. It is also must be noted that the taxes at issue here could not be discharged in a Chapter 7 case. 11 U.S.C. § 523(a)(1).