In re PREMIER HOTEL DEVELOP-
MENT GROUP d/b/a Hospitality Con-
sultants, The Carnegie Hotel, Austin
Spring Spa & Salon, and Luigies EID
62–1761567 and 52–2261913; Premier
Investment Group d/b/a Premier In-
vestments EID 62–1721108; and Samu-
el T. Easley ss 415–23–3809, Debtors.

Durkan Patterned Carpet, Inc.,
a Georgia Corporation,
Plaintiff,

v.

Premier Hotel Development Group, a
Tennessee General Partnership; the
Public Building Authority of the City
of Johnson City, Tennessee; First
Tennessee Bank National Association;
and K. Newton Raff, Trustee, Defen-
dants,

and

Durkan Patterned Carpet, Inc.,
Third-party plaintiff,

v.

TBN Enterprises, L.L.C., d/b/a Design
Floor Systems, Third-party
defendant.

Bankruptcy Nos. 01–20922,
01–20923, 01–20940.
Adversary No. 01–2022.

United States Bankruptcy Court,
E.D. Tennessee.

Oct. 11, 2001.

John S. Taylor, Esq., McKinnon, Fowler, Fox & Taylor, Johnson City, TN, for Durkan Patterned Carpet, Inc.

P. Edward Pratt, Esq., Suzanne H. Bauknight, Esq., Baker, Donelson, Bearman & Caldwell, Knoxville, TN, for First Tennessee Bank National Association and K. Newton Raff, Trustee.

### MEMORANDUM

MARCIA PHILLIPS PARSONS, Bankruptcy Judge.

In this adversary proceeding, the plaintiff, Durkan Patterned Carpet, Inc. ("Durkan"), seeks to enforce its materialman's lien against the debtor's real property and a determination that its lien is superior to that held by the debtor's principal secured lender, First Tennessee Bank National Association ("First Tennessee"). Presently before the court is First Tennessee's mo-

tion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), as incorporated by Fed. R. Bankr.P. 7012(b). The motion presents the primary issue of whether under Tennessee law a materialman's lien takes precedence over subsequent encumbrances if notice of the lien was filed more than ninety days after the materials were furnished but prior to the ninety-day period following completion of the structure. The other issue presented is whether a bankruptcy filing by the owner of the real property within ninety days after completion of the structure tolls the materialman's ability to file a notice of lien. Because the court answers both of these questions in the negative, First Tennessee's motion to dismiss will be granted.[1]

### I.

In its complaint filed on September 27, 2000, in the Chancery Court for Washington County, Tennessee, Durkan alleges that it entered into a contract with Premier Hotel Development Group, L.L.C. ("Premier LLC") to supply carpet and related materials to Premier LLC for installation in connection with the construction of the Carnegie Hotel in Washington County, Tennessee. Durkan alleges that it fully complied with the contract by furnishing the carpet, but that it has not been paid the sum of $63,755.55 which remains owing under the contract. Because of this failure, Durkan filed a "NOTICE OF MECHANIC'S AND MATERIALMAN'S LIEN" (the "Notice") in the register's office for Washington County, Tennessee on July 10, 2000. The Notice, a copy of which

---

1. Both Durkan and First Tennessee have filed statements in accordance with Fed. R. Bankr.P. 9027(e)(3) asserting that the principal action is a core proceeding. It does appear to the court that the principal action is core because it involves a determination of the validity, extent, or priority of liens against debtor Premier Hotel Development Group's main asset. *See* 28 U.S.C. § 157(b)(2)(K). However, even if the principal action is noncore, it is otherwise related to the underlying bankruptcy case and since Durkan and First Tennessee have also consented to entry of final orders and judgment by this court, this matter is properly before the court. *See* 28 U.S.C. § 157(c)(1) and (2).

is attached to the complaint, was addressed to Carnegie Hotel and Premier LLC and specified that Durkan furnished materials "on or about March 17, 2000, and prior thereto."

Durkan also alleges in the complaint that at the time the contract was executed, Premier LLC owned the property upon which the Carnegie Hotel was located and that effective December 31, 1999, Premier LLC merged into Premier Hotel Development Group, a Tennessee general partnership ("PHDG"). By quitclaim deed dated March 23, 2000, PHDG conveyed the Carnegie Hotel property to the Public Building Authority of Johnson City, Tennessee, who by agreement dated that same day, leased the property back to PHDG and provided PHDG an option to repurchase the Carnegie Hotel property for $10. Also, on March 23, 2000, PHDG executed a deed of trust in favor of First Tennessee on the Carnegie Hotel property in order to secure a loan in the principal amount of $8,250,000. Durkan requests in the complaint that an attachment issue and be levied on the Carnegie Hotel property, that it be granted a judgment in the amount of $63,755.55 plus interest, that the judgment be declared a lien superior to First Tennessee's deed of trust and PHDG's leasehold interest, and that the court order the Carnegie Hotel sold in satisfaction of Durkan's judgment.

PHDG filed for chapter 11 relief on March 15, 2001, commencing the underlying bankruptcy case, and Durkan's state court action was removed to this court by the debtor on April 16, 2001. In its motion to dismiss, First Tennessee states that according to the allegations in the complaint, Durkan supplied materials on or about March 17, 2000, but did not record its Notice until July 10, 2000, some 115 days later. First Tennessee asserts that pursuant to TENN. CODE ANN. § 66–11–117, a

materialman's lien relates back and takes precedence over all other subsequent liens only if notice of the materialman's lien is filed within ninety days following completion of the materialman's contract. First Tennessee contends that because Durkan's Notice was not filed within ninety days of March 17, 2000, it does not have precedence over First Tennessee's deed of trust recorded on March 23, 2000.

First Tennessee also asserts that Durkan's action against it should be dismissed because Durkan "failed to perfect its mechanic's lien through issuance of a proper attachment as required by TENN. CODE ANN. § 66–11–126." First Tennessee maintains that under TENN. CODE ANN. § 29–6–117(c), Durkan was required to post an attachment bond "double the amount of Durkan's claim" which "would have been in a minimum amount of $127,511.10 [$63,755.55 × 2]." Because Durkan only posted a bond in the amount of $500, First Tennessee argues that the attachment was void and did not perfect the Durkan's lien.

In response, Durkan asserts that under applicable law, a materialman may file its notice of lien within ninety days after expiration of its contract or within ninety days after the building is completed. Durkan maintains that because no notice of completion was ever filed on the Carnegie Hotel, the building was completed on January 19, 2001 when the final certificate of occupancy was issued. Thus, the argument continues, Durkan had ninety days after January 19, 2001, in which to perfect its lien. Because the debtor filed bankruptcy on March 15, 2001, during the ninety-day period following completion of the building, Durkan asserts that its ability to preserve its lien was stayed by the automatic stay of the bankruptcy filing and that pursuant to 11 U.S.C. § 108(c), the

ninety-day period does not expire until thirty days after the stay is lifted.

With respect to First Tennessee's argument regarding the amount of the attachment bond, Durkan disagrees that Tennessee law requires the amount of the bond to be twice the amount sought. Instead, Durkan asserts that when the property to be attached is real property, TENN. CODE ANN. § 29–6–116(4) only requires "a bond in penalty sufficient to cover all costs and damages as same may be estimated by the issuing officer." Durkan states that the issuing officer for the state court determined the amount of the bond and that this amount is "perfectly satisfactory." Furthermore, argues Durkan, a defect in the bond is not cause for dismissal of the attachment and even if the amount of the bond is incorrect, Durkan should be permitted to modify the amount.

## II.

The Tennessee statutory scheme for materialmen's liens is found in Title 66, Chapter 11 of the Tennessee Code under the heading "MECHANICS' AND MATERIALMEN'S LIENS." *See* TENN. CODE ANN. §§ 66–11–101 through 66–11–146. These provisions appear to set forth two types of liens, with the distinction between the two turning not on whether goods or services are supplied as the heading suggests, i.e., a "materialman's lien" or a "mechanic's lien,"

but on whether the entity contracted directly with the owner of the real property as opposed to a contractor or a subcontractor. *See* Charles H. Barnett, Note, *Mechanics' and Materialmen's Liens in Tennessee: Some Problem Areas*, 5 U. MEM. L. REV. 359, 360 (1975).

In its brief filed in opposition to First Tennessee's motion to dismiss, Durkan states that it contracted directly with the owner of Carnegie Hotel when it agreed to supply carpet for the project. As such, the statutory basis for Durkan's lien is TENN. CODE ANN. § 66–11–102(a)[2] which provides in part that "[t]here shall be a lien upon any lot of ground or tract of land upon which a house or structure has been erected ... by special contract[3] with the owner or the owner's agent, in favor of the contractor, mechanic, laborer, founder or machinist, who does the work ... or furnishes the materials ... for such building...." A lien under this provision takes effect "from the time of the visible commencement of operations," *see* TENN. CODE ANN. § 66–11–104; and "continue[s] for one (1) year after the work is finished or materials are furnished, and until the final decision of any suit that may be brought within that time for its enforcement." TENN. CODE ANN. § 66–11–106.

Because the contract is with the owner, no notice of the lien is required in order to perfect the lien as to the owner.[4] *Walker*

---

**2.** If Durkan had not contracted directly with the owner or its agent, but had instead contracted with a contractor or subcontractor, its lien would have arisen pursuant to TENN. CODE ANN. § 66–11–115(a) which provides that "[e]very journeyman or other person contracted with or employed to work on the buildings ... or to furnish materials for the same, whether such journeyman, furnisher, or other person was employed or contracted with by the person who originally contracted with the owner of the premises, or by an immediate or remote subcontractor acting under contract with the original contractor,

or any subcontractor, shall have this lien for such work or material...."

**3.** The words "special contract" have been construed by the Tennessee courts to simply mean an ordinary contract for the furnishing of materials or labor. *See* Barnett, 5 U. MEM. L. REV. at 360 (citing *Province v. Mitchell*, 44 Tenn.App. 115, 312 S.W.2d 861 (1958)).

**4.** In contrast, a supplier who did not contract directly with the owner perfects its lien as against the owner by giving the owner written notice of the lien within ninety days after the

*Supply Co. v. Corinth Community Dev., Inc.*, 509 S.W.2d 514 (Tenn.App.1974). However, in order to perfect, or in the language of the statute, "preserve" the lien as to subsequent purchasers or encumbrancers for value without notice, the lienholder must file the contract or a sworn statement in lieu thereof with the register's office of the county where the real property is located. *See* TENN. CODE ANN. §§ 66–11–111 (applicable statute if contract filed)[5] and 66–11–112(a) (sworn statement provision).[6] *See also Don Huckaby Plumbing Co. v. Cardinal Indus. Mortgage Co.*, 848 S.W.2d 57, 59 (Tenn. 1993) (noting the two ways in which lien may be perfected as to subsequent third parties).

From the Notice which Durkan filed, it is apparent that Durkan sought to perfect its statutory lien as to third parties by filing a sworn statement rather than the actual contract. Under TENN. CODE ANN. § 66–11–112(a), these sworn statements must be filed "within ninety (90) days after

the building or structure or improvement is … completed … or the contract of the lienor expires …, prior to which time the lien shall be effective as against such purchasers or encumbrancers without such registration…." Although the language of this statute is not entirely clear, the Tennessee courts have construed this provision as providing the lienholder two different ninety-day periods in which to file a lien notice: the ninety days after the contract expires and the ninety days after the building is completed. *Concrete Supply Co. of Oak Ridge, Inc. v. Union Peoples Bank*, 540 S.W.2d 250, 251 (Tenn.App. 1976) (citing *First State Bank v. Stacey*, 37 Tenn.App. 223, 261 S.W.2d 245 (1952)); *Southern Blow Pipe & Roofing Co. v. Grubb*, 36 Tenn.App. 641, 260 S.W.2d 191, 194 (1953). *See also Davis v. Smith*, 650 S.W.2d 47, 49 (Tenn.App.1983) (recognizing that TENN. CODE ANN. § 66–11–112 gives lienholder ninety days after completion of building to assert claim, regardless of when last work performed); Barnett, 5

---

building is completed or the contract of the supplier has expired. *See* TENN. CODE ANN. § 66–11–115(b).

**5.** TENN. CODE ANN. § 66–11–111 states as follows:

Where the contract is in writing, by virtue of which real property is so improved, it may be acknowledged (or in lieu sworn to by the contractor as to its execution by the owner) and recorded in the lien book in the register's office in the county where the premises, or any part, are situated. Such registration shall be noticed to all persons of the existence of such lien, provided it sets forth the contract price and describes the real estate to be affected with reasonable certainty.

**6.** TENN. CODE ANN. § 66–11–112(a) provides that:

In order to preserve the virtue of the lien, as concerns subsequent purchasers or encumbrancers for a valuable consideration without notice thereof, though not as con-

cerns the owner, such lienor, who has not so registered such lienor's contract, is required to file for record in the office of the register of deeds of the county where the premises, or any part affected lies, a sworn statement similar to that set forth in § 66–11–117, and pay the fees. The register shall file, note and record same, as provided in § 66–11–117. Such filing for record is required to be done within ninety (90) days after the building or structure or improvement is demolished, altered and/or completed, as the case may be, or is abandoned and the work not completed, or the contract of the lienor expires or is terminated or the lienor is discharged, prior to which time the lien shall be effective as against such purchasers or encumbrancers without such registration; provided, that the owner shall give thirty (30) days' notice to contractors and to all of those lienors who have filed notice in accordance with § 66–11–145 prior to the owner's transfer of any interest to a subsequent purchaser or encumbrancer for a valuable consideration.

U. Mem. L. Rev. at 363 (noting dual periods).

■ In the present case, Durkan did not file its Notice within either of these two ninety-day periods. Instead, Durkan filed the Notice during the space of time between the two ninety-day periods. As First Tennessee observes in its brief, the Tennessee courts considering this issue have concluded that a notice filed within this "dead" period is invalid and ineffective. *Southern Blow Pipe & Roofing Co.,* 260 S.W.2d at 195 (citing *Cole Mfg. Co. v. Falls,* 92 Tenn. 607, 22 S.W. 856 (1893); *Bird Bros. v. Southern Surety Co.* 139 Tenn. 11, 200 S.W. 978 (1918); *Oliver King Sand & Lime Co. v. Sterchi,* 7 Tenn.App. 647 (Tenn.App.1928)). *See also* Barnett, 5 U. Mem. L. Rev. at 363.

In apparent recognition of this adverse case authority, Durkan cites the Tennessee Supreme Court's 1993 *Huckaby Plumbing* decision wherein the court concluded that even though a supplier's lien notice was invalid due to a defective acknowledgment, the lien still took precedence over a subsequent mortgage holder because the supplier filed suit to enforce its lien within ninety days of completing its work. *Don Huckaby Plumbing Co.,* 848 S.W.2d at 59. The court observed that Tenn. Code Ann. § 66–11–112(a) specifically states that prior to the expiration of the ninety-day period, the lien shall be effective without registration as to subsequent purchasers. Thus, "[e]ven with a defective recordation, Huckaby Plumbing had a lien in existence for 90 days after completion of its work, and suit to enforce the lien filed during that period preserved its priority." *Id.*

Based on its citation of the *Huckaby Plumbing* decision, Durkan appears to be making the argument that either (1) having filed suit on September 27, 2000, to enforce its lien, the lien is perfected; or (2) the lien is preserved pending expiration of both ninety-day periods, and because the second ninety-day period has not expired due to the debtor's bankruptcy filing, the lien is still in effect. Unfortunately for Durkan, the court must reject both contentions.

■ With respect to the assertion that Durkan's lien was preserved by the filing of the state court action, it must be noted that unlike the lawsuit in *Huckaby Plumbing,* the lawsuit in the present case was not filed within either of the ninety-day periods, but in the "dead" period between. The holding in *Huckaby Plumbing* specifically turned on the fact that the lienholder filed suit within ninety days of completing his work, rendering the requirement to file a sworn statement under § 66–11–112(a) unnecessary. *See Don Huckaby Plumbing Co.,* 848 S.W.2d at 59. Accordingly, *Huckaby Plumbing* is factually distinguishable from the instant case.

On the other hand, the court does observe that the language in Tenn. Code Ann. § 66–11–112(a) that the lien is preserved without registration prior to the expiration of the ninety days (*see* n. 6, *supra*) suggests that both ninety-day periods must expire before the lien must be registered and that, therefore, any lien notice filing or lawsuit commencement prior to the expiration of both ninety-day periods would preserve the lien as to third parties. However, this interpretation is not dictated by *Huckaby Plumbing* and is expressly contrary to the Tennessee Court of Appeals' decision in *Southern Blow Pipe* that a notice filed more than ninety days after furnishing labor or materials, but before the ninety-day period following completion of the structure or improvement, is invalid. *Southern Blow Pipe & Roofing Co.,* 260

S.W.2d at 195. The result dictated by *Southern Blow Pipe* is that even though the purpose of the notice statute has been served because the lienholder gave notice before expiration of the ninety-day period following completion of the building, the notice is invalid because it was given before the ninety-day period commenced rather than specifically within the requisite ninety days. While this court recognizes the illogic of a holding which penalizes a lienholder for giving too much rather than too little notice, it must assume, absent specific indication to the contrary by the Tennessee state courts, that *Southern Blow Pipe* is still good law. *See* Barnett, 5 U. MEM. L. REV. at 363 (calling Tennessee courts' interpretation "unrealistic and illogical"). In light of *Southern Blow Pipe* and mindful of the frequent admonition by the Tennessee courts that strict compliance with the lien statutes is required, *see, e.g., D.T. McCall & Sons v. Seagraves,* 796 S.W.2d 457, 460 (Tenn.App.1990); this court is compelled to find that the filing of the lawsuit by Durkan did not preserve its lien as to intervening encumbrances.

■ The court next turns to Durkan's argument that its lien remains in effect because the ninety-day period subsequent to the Carnegie Hotel's completion has not expired due to PHDG's bankruptcy filing within the ninety-day period. Durkan notes that pursuant to 11 U.S.C. § 108(c),[7] nonbankruptcy statutes of limitations with respect to actions against the debtor do not expire until thirty days after the automatic stay is lifted. Durkan observes that the Tennessee Supreme Court held in *Weaver* that § 108(c) applies to lien enforcement periods as well as statutes of limitations. *See Weaver v. Hamrick,* 907 S.W.2d 385, 391 (Tenn.1995). Reading *Weaver, Huckaby Plumbing* and 11 U.S.C. § 108(c) together, Durkan concludes that its lien priority is preserved because it may still bring suit to enforce its lien, in lieu of filing a notice of lien, within thirty days after the automatic stay is lifted in the underlying bankruptcy case.

Durkan's conclusion is erroneous and misconstrues *Huckaby Plumbing.* As stated previously, TENN. CODE ANN. § 66–11–112 clearly provides that in order to preserve the priority of a materialman's lien over subsequent encumbrances, the lienholder must record within the requisite ninety-day periods a certain sworn statement (absent the filing of the contract). The *Huckaby Plumbing* court in effect recognized an exception to this statute, concluding that it was not necessary to file a sworn statement if suit to enforce the lien was filed within the required ninety days. *Don Huckaby Plumbing Co.,* 848 S.W.2d at 59 ("[R]equiring compliance with the technicalities of giving notice and recordation would appear to be a useless task once suit is filed within the requisite 90 days."). Thus, *Huckaby Plumbing* only

7. Subsection (c) of 11 U.S.C. § 108 provides: Except as provided in section 524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected under section 1201 or 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—
(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
(2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.

permitted a complaint to be filed in lieu of a sworn statement; *Huckaby Plumbing* did not abrogate the basic requirement of TENN. CODE ANN. § 66–11–112 that some action be taken within ninety days to perfect the lien as to subsequent encumbrances and that unless this action is timely taken, the lien is not preserved. *Id.* ("Had Huckaby Plumbing not filed suit to enforce its lien within the 90 day period, then the failure to include the acknowledgment [on the sworn statement] would likely be fatal because acknowledgment is required to 'preserve' priority *beyond* the 90 day period.") [emphasis in original].

Contrary to Durkan's assertion, this ninety-day period was not stayed by PHDG's bankruptcy filing. Although 11 U.S.C. § 362(a)(4) does state as a general rule that a bankruptcy filing stays "any act to create, perfect, or enforce any lien against property of the estate," there is an exception to this provision in § 362(b)(3) of the Bankruptcy Code for "any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) . . . ." Section 546(b) provides that "[t]he rights and powers of a trustee under sections 544, 545 [avoidance of prepetition statutory liens] and 549 [avoidance of postpetition transactions] of this title are subject to any generally applicable law that . . . permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection." Sections 362(b)(3) and 546(b) construed together indicate that the filing of a bankruptcy does not stay and the bankruptcy trustee may not avoid the perfection of certain interests in property whereby under nonbankruptcy law the perfection relates back and is effective over intervening lien creditors if it occurs prior to the expiration of a grace period. 3 COLLIER ON BANKRUPTCY ¶ 362.05[4] (15th ed. rev.2001). As explained by the treatise COLLIER ON BANKRUPTCY:

> For example, Article 9 of the Uniform Commercial Code gives a purchase money secured creditor a ten day grace period to perfect its security interest. Under the U.C.C., perfection before the expiration of that period is effective against an intervening lien creditor. Section 362(b)(3) permits the creditor to perfect even if a bankruptcy case is commenced during the grace period. Perfection before the expiration of the grace period is then effective against the trustee under section 546(b). Without this exception, the creditor would be unable to perfect its interest and would lose the benefit of the grace period.

*Id.*

The courts which have considered this issue have concluded that mechanics' and materialmen's liens granted by state laws similar to that of Tennessee's fall within § 546(b). *Colchester v. Hinesburg Sand and Gravel, Inc. (In re APC Constr., Inc.),* 112 B.R. 89, 111–17 (Bankr.D.Vt.1990); *Victoria Grain Co. of Minneapolis v. Janesville Elevator Constr., Inc. (In re Victoria Grain Co. of Minneapolis),* 45 B.R. 2, 5 (Bankr.D.Minn.1984); *In re Saberman,* 3 B.R. 316, 318 (Bankr.N.D.Ill. 1980). Thus, "the holder of an unperfected mechanic's lien [may] file its notice of lien post petition without running afoul of the automatic stay." *Cowles Tool Co. v. Production Steel, Inc. (In re Production Steel, Inc.),* 21 B.R. 951, 954 n. 9 (Bankr. M.D.Tenn.1982). *See also Klein v. Civale & Trovato, Inc. (In re Lionel Corp.),* 29 F.3d 88 (2d Cir.1994); *Cocolat, Inc. v. Fisher Dev., Inc. (In re Cocolat, Inc.),* 176

B.R. 540, 550 (Bankr.N.D.Cal.1995); *Middleton & Dugger Plumbing & Heating, Inc. v. Richardson Builders, Inc. (In re Richardson Builders, Inc.)*, 123 B.R. 736, 738 (Bankr.W.D.Va.1990). And, because no bankruptcy stay precluded the filing of notice of lien, the ninety-day period for filing the notice was not tolled pursuant to 11 U.S.C. § 108(c). *See In re DiCamillo*, 186 B.R. 59, 60 (Bankr.E.D.Pa.1995) ("[Section 108(c)] extends the statute of limitations for creditors in actions against the debtor, where the creditor is hampered from proceeding outside the bankruptcy court due to the provisions of 11 U.S.C. § 362."); *In re APC Constr., Inc.*, 112 B.R. at 117 (because the timely perfection of a contractors' lien is not subject to the Bankruptcy Code's automatic stay, the contractors' lien perfection period by definition is not tolled).

This conclusion is not contrary to the Tennessee Supreme Court's decision in *Weaver*, wherein the court held that 11 U.S.C. § 108(c) applies to lien enforcement periods. *See Weaver*, 907 S.W.2d at 391. Acts to enforce a lien, in contrast to the perfection actions which fall within 11 U.S.C. § 546(b), are stayed by the bankruptcy filing and, thus, any time periods for enforcement are tolled by § 108(c) of the Bankruptcy Code. *See* 11 U.S.C. § 362(a)(4). *See also In re Richardson Builders, Inc.*, 123 B.R. at 739 ("[I]n Virginia, the recording of a memorandum of lien does not violate the stay imposed by Section 362(a), while the filing or prosecution of an enforcement action ... does do so.").

In the present case, TENN. CODE ANN. § 66–11–112(a)'s ninety-day period for perfecting liens as to subsequent encumbrancers was not stayed or tolled by the debtor's bankruptcy filing. Thus, once the ninety-day period following the Carnegie Hotel's completion expired, Durkan's lien ceased being effective as to subsequent encumbrancers, i.e., First Tennessee, because Durkan did not record its lien within this ninety-day period or the previous ninety-day period subsequent to when the materials were furnished. As such, Durkan's request that its lien be declared superior to that held by First Tennessee must be denied.[8]

### III.

An order will be entered in accordance with this memorandum opinion granting First Tennessee's motion and dismissing Durkan's claims against First Tennessee and K. Newton Raff, trustee.

---

**8.** In light of this ruling, it is unnecessary for the court to consider First Tennessee's argument that the complaint should be dismissed because Durkan's attachment bond was for an insufficient amount. The court does note, however, that contrary to First Tennessee's assertion, an attachment issued on a defective bond is voidable rather than void. *See, e.g., Shaw v. Holmes*, 51 Tenn. 692 (1871). Furthermore, pursuant to TENN. CODE ANN § 29–6–124, "attachment law shall be liberally construed, and the plaintiff, before or during trial, shall be permitted to amend any defect of form in the affidavit, bond, attachment, or other proceedings; and no attachment shall be dismissed for any defect in, or want of, bond, if the plaintiff, plaintiff's agent, or attorney will substitute a sufficient bond."