John F. WEAVER, Trustee in
Bankruptcy for the Estate of
James R. Hamrick, Plaintiff,

v.

Jeannie B. HAMRICK, Gilbert Torbett,
ITT Commercial Financial Corp. and
Madeline Harkleroad, Defendants.

and

Tri–City Bank & Trust Co., Defendant–
Appellee,

and

First Tennessee Bank, N.A.,
Defendant–Appellant.

Supreme Court of Tennessee,
at Knoxville.

Aug. 28, 1995.

John F. Weaver, McCord, Weaver & Troutman, Knoxville, for Plaintiff.

Robert L. Arrington and Angela R. Kelley, Moore, Stout, Waddell & Ledford, Kingsport, for Defendant–Appellant.

J. Wesley Edens, Icenhour, Miller & Edens, Bristol, for Defendant–Appellee.

## OPINION

REID, Justice.

This interpleader action was filed by the trustee in bankruptcy for the estate of James R. Hamrick against Hamrick's wife, Jeannie Hamrick, and against the judgment lien creditors of Jeannie Hamrick,[1] First Tennessee Bank, N.A. (First Tennessee) and Tri–City Bank & Trust Company (Tri–City). The funds paid into court represent the net proceeds from the sale of Jeannie Hamrick's interest in a tract of land owned by the Hamricks as tenants by the entirety. The trial court held that First Tennessee's claim had priority over Tri–City's; the Court of Appeals held that First Tennessee had lost its priority and ordered the proceeds to be distributed *pro rata*. First Tennessee appealed. The record supports First Tennessee's claimed priority.

The facts are not disputed. On March 13, 1989, James Hamrick, individually and doing business as Hamrick's Budget Motel, filed a

---

1. The trustee's complaint named several other parties against whom default judgments were entered.

Chapter 11 [2] bankruptcy petition in the United States Bankruptcy Court. On July 14, 1989, it was converted to a Chapter 7 [3] proceeding. At the time the petition was filed, Hamrick and his wife, Jeannie Hamrick, owned as tenants by the entirety a parcel of real property located in Sullivan County, known as the "Dry Branch Road property." When the petition was filed, Jeannie Hamrick's interest in the property was not subject to any liens. Jeannie Hamrick did not join her husband's petition, nor did she file separately.

On January 19, 1990, First Tennessee obtained a judgment in the Chancery Court of Sullivan County against Jeannie Hamrick in the amount of $73,939.28. On that same day, the judgment was recorded in the Register's Office of Sullivan County, Tennessee.

On September 6, 1990, the trustee moved the bankruptcy court for authorization to sell the Dry Branch Road property on terms whereby the purchaser would acquire a fee simple title that was free of any liens. Jeannie Hamrick objected to the motion, claiming that her interest as a tenant by the entirety was not subject to sale.

Before any further action was taken in the bankruptcy proceedings, Tri–City obtained a judgment in the Chancery Court of Sullivan County against Jeannie Hamrick in the amount of $43,095.84. Tri–City's judgment was recorded in the Register's Office of Sullivan County on November 8, 1990.

On September 17, 1991, the bankruptcy court approved an agreement by the parties that Jeannie Hamrick's interest in the property was 40 per cent of the total value and that the property would be sold in fee simple free of all liens. The property was sold on March 11, 1992, and the bankruptcy court entered an order confirming the sale on May 20, 1992.

The order confirming the sale provided that the interests of Jeannie Hamrick, First Tennessee and Tri–City "shall attach to" the sum of $16,477.44, representing Jeannie Hamrick's agreed share of the proceeds. Upon filing a suit in chancery court seeking a declaration of the rights of the parties in the fund, the trustee in bankruptcy deducted $1,200.00 for attorney's fees, and deposited $15,277.44 into the registry of the court. The chancery court held that the judgment lien of First Tennessee had priority over that of Tri–City, and that First Tennessee was therefore entitled to all of the interpled funds.

First Tennessee contends that the trial court properly held its lien to be superior to that of Tri–City's. Tri–City contends that First Tennessee's lien lost its priority when three years expired without a levy of execution. Resolution of this issue requires the consideration of two Tennessee statutes and the provisions of the United States Bankruptcy Code.

Upon recording its judgment in the County Register's Office, a judgment creditor acquires a lien against all real property owned by the debtor that is located in the county where the lien is filed. Tenn.Code Ann. § 25–5–101(b) (Supp.1994). Consequently, First Tennessee's lien attached to Jeannie Hamrick's interest in the Dry Branch Road property subject to execution on January 19, 1990, and Tri–Cities' lien attached on November 8, 1990. First Tennessee's lien, therefore, had priority. *See Kelley v. McLemore,* 560 S.W.2d 74, 77 (Tenn.Ct.App.1977). Tenn. Code Ann. § 25–5–105(a) (Supp.1994), provides that a judgment lien is lost, "unless an execution is taken out within three (3) years commencing with the date of entry of the judgment." Neither creditor initiated any action for the sale of the property in satisfaction of its judgment, but the property was sold by order of the bankruptcy court within three years of the dates on which the liens attached.

By consenting that all her interests in the property be sold and agreeing that the value of her interests was 40 per cent of the total value of the property, Jeannie Hamrick foreclosed any contention that her interest as a tenant by the entirety was not subject to the jurisdiction of the bankruptcy court. However, that issue is relevant to the dispute be-

**2.** 11 U.S.C. §§ 1101–1129 (1993).

**3.** 11 U.S.C. §§ 701–766 (1993).

tween First Tennessee and Tri–City. The Court of Appeals found that the bankruptcy proceeding filed by James R. Hamrick did not preclude the levy of execution on Jeannie Hamrick's interest in property owned by them as tenants by the entirety, and First Tennessee's failure to execute on the property within three years resulted in the loss of its priority. The issue, therefore, is not whether Jeannie Hamrick had an interest in the property subject to attachment by her judgment creditors or the extent of that interest. The issue is whether First Tennessee's priority survived the failure to execute and the sale pursuant to the bankruptcy court order.

In *In re Arango*, 992 F.2d 611 (6th Cir. 1993), the Sixth Circuit Court of Appeals described the application of the bankruptcy code to a Tennessee tenancy by the entirety:

> Under Tennessee law, when husband and wife hold property together, they are presumed to hold it as tenants by the entirety unless the documents which evidence their ownership indicate that the property is held separately. Under tenancy by the entirety, the husband and wife *as a unit* have the right to the current use and enjoyment of the property. As individuals, they each possess a right of survivorship: if one spouse dies, then the other spouse takes the property in fee simple absolute. Each spouse may convey his or her right of survivorship without the consent of the other. However, the husband and wife's present right to use and enjoy the property may be transferred only by consent of both the husband and the wife. Therefore, a third party, such as a lien creditor, may own one spouse's right of survivorship without the consent of the other spouse, but a third party may not own a present possessory interest in the property without the approval of both spouses. Accordingly, a creditor of only one spouse may execute a judgment against only that spouse's right of survivorship but not against the spouse's present possessory interest.

> .      .      .      .      .

> This case highlights the fact that the Bankruptcy Code does not always incorporate a state's definition of property into section 541(a)(1). By writing in section 522(b)(2)(B) that entireties property is exempt from the bankruptcy estate, Congress implies that an individual's entireties property is a "legal or equitable interest" in property that is part of his bankruptcy estate, despite the fact that Tennessee law does not consider entireties property to be owned by an individual.

> In addition, the Bankruptcy Code's method for dealing with entireties property highlights a reconcilable conflict between Tennessee's understanding of property and the Bankruptcy Code's understanding of property. Under Tennessee law, Arango does not, as an individual, have a present possessory interest in entireties property. Instead, Arango and his wife, as a unit which is separate and apart from them as individuals, have a present possessory interest in entireties property. The practical effect of Tennessee's legal construct is that Arango has the right to use and enjoy entireties property, at least until his wife may predecease him or he and his wife, together, convey their present possessory interest, despite the legal belief that Arango does not have a present possessory interest. Under the Bankruptcy Code, on the other hand, Arango does have a present possessory interest in entireties property which is considered part of his individual bankruptcy estate under section 541(a)(1). The Bankruptcy Code reconciles its concept of entireties property with Tennessee's concept of entireties property, however, by exempting entireties property from the debts of individual spouses under section 522(b)(2)(B). In this way, the Bankruptcy Code accommodates states like Tennessee that have adopted the entireties-property concept, without having to incorporate that concept into the bankruptcy definition of property in section 541(a)(1).

*Id.* at 613–14 (emphasis in original) (citations omitted).

■ In the present case, when James Hamrick filed his petition on March 13, 1989, his interest in the Dry Branch Road property became a part of his bankruptcy estate even

though under Tennessee law he did not have a separate present possessory interest in the property.[4]

This particular issue was decided in *In re Ward*, 837 F.2d 124 (3rd Cir.1988). In that case, the Third Circuit Court of Appeals held that the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362(a)[5], applies to the entireties property itself, not just the debtor's interest in the property. The mortgagee had obtained a foreclosure judgment in October 1985 on property owned by Charles and Cynthia Ward as tenants by the entirety. Charles Ward filed a Chapter 7 petition in bankruptcy on January 9, 1986. On January 24, 1986, the property was sold to the mortgagee at a judicial sale under state law to satisfy the mortgagee's judgment. The mortgagee claimed that the automatic stay which became effective upon the commencement of Charles Ward's bankruptcy proceeding did not protect Cynthia Ward's interest, because under New Jersey law creditors of either spouse may execute upon a spouse's right of survivorship in entireties property. The court stated:

> The issue is not whether Cynthia Ward had an interest [the mortgagee] could reach by some method. It is simply, as the bankruptcy and district courts recognized, whether [the purchaser] could acquire any interest in the property as a consequence of the foreclosure sale conducted after Charles Ward's petition was filed. The answer is clear: it could not.

*Id.* at 125 (citations omitted) (footnote omitted).

---

**4.** Apparently, James Hamrick did not claim as exempt his present possessory interest in the property under 11 U.S.C. § 522(b)(2)(B). Under 11 U.S.C. § 522(b)(2)(B), a debtor may exempt from the bankruptcy estate:

> any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.

Had Hamrick claimed as an exemption his present possessory interest, his bankruptcy estate would have included only his right of survivorship in the property. *See Arango*, 992 F.2d at 614. Under those circumstances, the trustee would not have had the right to sell the entire property pursuant to 11 U.S.C. § 363(h) (1993), which provides:

> Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—
> (1) partition in kind of such property among the estate and such co-owners is impracticable;
> (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
> (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
> (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

*See In re Shaw*, 5 B.R. 107, 110 (Bankr. M.D.Tenn.1980).

**5.** Under 11 U.S.C. § 362(a) (1993 & Supp.1995), the filing of a bankruptcy petition operates as a stay, applicable to all entities, of—

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
> (4) any act to create, perfect, or enforce any lien against property of the estate;
> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;
> (7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and
> (8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

The circuit court noted that the statutory definition of a debtor's estate, which comprises "all legal or equitable interests of the debtor in property" at the time the case is filed, 11 U.S.C. § 541(a)(1), includes a debtor's interest in entireties property. *Id.* The court held that the automatic stay of Section 362(a), operated to stay any action that would affect property held by the bankrupt as a tenant by the entirety and, since the foreclosure sale was conducted in violation of the stay, it was void. *In re Ward,* 837 F.2d at 126.

█ When, as in the present case, the interest of one spouse as a tenant by the entirety is included in the bankruptcy estate, the creditors of the other spouse are precluded by the automatic stay from taking any action which would affect any interest in the property. Thus, First Tennessee and Tri-City were enjoined from executing on their judgment liens against the Dry Branch Road property for as long as the automatic stay remained in effect.

█ Having concluded that the judgment creditors were stayed from execution, the next issue is whether the limitations period of Tenn.Code Ann. § 25–5–105 is tolled during the duration of the automatic stay. Two bankruptcy court decisions, decided under the prior version of Tenn.Code Ann. § 25–5–105, have addressed the issue.

In *In re Harbin,* 25 B.R. 703 (Bankr. W.D.Tenn.1982), the automatic stay precluded a judgment lien creditor from enforcing his judgment against the debtor's property. At the time of that case, Tenn.Code Ann. § 25–5–106 (1980) provided:

> If the sale within the twelve (12) months is prevented by injunction, writ of error, appeal in the nature of a writ of error, or *other adverse proceeding in court,* or by appeal from judgments and decrees of courts of equity in this state to the Supreme Court, or Court of Appeals, the lien shall be continued, provided the creditor shall issue execution and sell the land within one year after the injunction is dissolved, the judgment or decree affirmed, or adverse legal proceeding dismissed. (emphasis added).

The court held that this statute allowed the extension of the judgment lien enforcement period. *Id.* at 706.

Relying on *Harbin,* the trustee in *In re Ward,* 42 B.R. 946 (Bankr.M.D.Tenn.1984), contended that he was not barred from enforcing his lien rights against a third party because the property was not sold within twelve months of the judgment. Rejecting the trustee's argument, the court stated:

> The *Harbin* case is, however, distinguishable for two reasons. First, *Harbin* involved a stay precluding a creditor from enforcing a judgment lien *against* the debtor's property. In this case the trustee is attempting to enforce a lien against land owned by a third party. Section 362 does not affect the trustee's lien enforcement rights against property held by a third party. Furthermore, the language of TENN. CODE ANN. § 25–5–106 relied on in the *Harbin* case has since been amended to now read as follows:
>
> > If the sale within twelve (12) months is prevented by injunction or by appeal to the Supreme Court, or Court of Appeals, the lien shall be continued. . . .
>
> By eliminating extension for "other adverse proceeding in court," it is arguable that the Tennessee legislature has narrowed the situations in which the life of the lien may be extended. The conditions for suspension of the 12–month period contained in § 25–5–106 are not present.

*Id.* at 949.

Tenn.Code Ann. § 25–5–106 (Supp.1994) now provides:

> If an appeal is taken from any judgment for which the lien provided by this chapter would apply, the time for sale provided in § 25–5–105 shall commence upon the final determination of such case.

This statute tolls the three-year lien enforcement period in Section 25–5–105 only during an appeal of the underlying judgment. There is no provision under Section 25–5–106 or any other State statute for the suspension or extension of the judgment lien enforcement period when a bankruptcy proceeding has stayed action against property subject to the lien. The conclusion is that State law

does not preserve the lien beyond its term even though enforcement is precluded by the Bankruptcy Code.

However, the Bankruptcy Code itself offers the lien creditor some relief. Section 108 of the Bankruptcy Code provides for an extension of time within which the lien may be enforced upon the lifting of the automatic stay. Section 108(c) states in relevant part:

... if applicable nonbankruptcy law ... fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor ... and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 30 days after notice of the termination or expiration of the stay under section 362....

11 U.S.C. § 108(c) (1993).

■ Section 108(c) applies to lien enforcement periods as well as statutes of limitations. *See In re Hunters Run Ltd. Partnership*, 875 F.2d 1425, 1428 (9th Cir.1989) (mechanic's lien); *In re Morton*, 866 F.2d 561, 566 (2nd Cir.1989) (judgment lien). While Section 108(c) refers only to a "claim against the debtor," it also applies to property of the estate because under 11 U.S.C. § 102(2) a "claim against the debtor" includes a "claim against property of the debtor." *In re Hunters Run*, 875 F.2d at 1427.

■ Section 108(c) does not in and of itself suspend the running of a lien enforcement period. The reference in Section 108(c)(1) to "suspension" is not to the operation of bankruptcy law but to other federal or state statutes that expressly provide for the suspension of deadlines. *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1073 (2nd Cir.1993). If the limitations period has expired and no other federal or state law mandates that the time period is suspended, then under Section 108(c)(2), a party has only thirty days after the lifting of the stay to act. *Rogers v. Corrosion Products, Inc.*, 42 F.3d

292, 297 (5th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995).

■ Since the lien enforcement period of Tenn.Code Ann. § 25–5–105 continues to run during a bankruptcy proceeding, a judgment lien creditor ordinarily would have three options: (1) move the bankruptcy court to lift the stay; (2) execute on the judgment after the bankruptcy proceeding terminates, if the three-year period has not expired; or (3) execute on the judgment during the thirty-day grace period following the lifting of the stay or termination of the bankruptcy proceeding. However, in the present case, First Tennessee and Tri–City did not need to exercise any of these options because the property was sold by order of the bankruptcy court before the three-year enforcement period in Tenn.Code Ann. § 25–5–105 had expired. Under this order, the property was sold free and clear of all liens.

■ The next issue is whether the liens on the property were transferred to the proceeds of the sale. When a debtor's property is sold by order of a court, the court may direct that the property be sold free of encumbrances with the judgment liens being transferred to the funds. 49 C.J.S. *Judgments* § 488(a) (1947); 2 Freeman on Judgments § 943 (5th ed. 1925). By virtue of the bankruptcy court order, the liens attached to the proceeds of the sale of the property.

■ First Tennessee and Tri–City each held a valid, perfected judgment lien against Jeannie Hamrick's interest in the property at the time the property was sold by the trustee. Since the judgment of First Tennessee was recorded first, its judgment lien had priority over Tri–City's. When First Tennessee's lien transferred to the funds, it retained its priority status.

The decision of the Court of Appeals is reversed, and the trial court's judgment awarding First Tennessee the balance of the interpled funds after payment of court costs is reinstated. The costs of this appeal are taxed to the appellee.

This case is remanded to the chancery court of Sullivan County for further proceed-

ings in accordance with this opinion and for the collection of costs accrued below.

ANDERSON, C.J., and DROWOTA, BIRCH, and WHITE, JJ.