NATIONAL BANK OF COMMERCE TRUST & SAVINGS ASSOCIATION,
APPELLEE, V. RICHARD L. HAM, APPELLANT,
AND SANDRA S. HAM, APPELLEE.
NATIONAL BANK OF COMMERCE TRUST & SAVINGS ASSOCIATION,
APPELLEE, V. RICHARD L. HAM, APPELLANT.
___N.W. 2d___

Filed April 9, 1999.   Nos. S-97-1120, S-97-1121.

Robert B. Creager, of Anderson, Creager & Wittstruck, P.C., for appellant.

Stanley H. Foster for appellee National Bank of Commerce.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

These appeals present an issue of first impression as to whether the applicable statute of limitations for a breach of contract claim is tolled during the period that the plaintiff is subject to an automatic stay by the U.S. Bankruptcy Court.

## SCOPE OF REVIEW

When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Wood v. McGrath, North, ante* p. 109, 589 N.W.2d 103 (1999).

## FACTS

On July 5, 1989, Richard L. Ham entered into a personal money reserve plan (PMRP) agreement with National Bank of Commerce Trust & Savings Association (National). Under the agreement, Richard was to repay in monthly installments money lent to him. Richard borrowed $1,000 under the PMRP agreement and made several payments. However, he failed to make payments in January, March, and May 1990 and thereafter. On approximately August 15, National prepared and delivered to Richard a letter informing him that National was exercising its option to demand immediate payment in the full amount of $808.08. The letter demanded payment by August 27. Richard has not paid the balance due under the PMRP agreement.

On July 26, 1989, Richard executed and delivered to National a security agreement and a level payment note in the total sum of $24,003. He failed to pay the installment due on March 17, 1990, and all subsequent installments. National accelerated the balance due and exercised its right to repossess the collateral set forth in the security agreement. National sold the collateral, and on August 29, notified Richard of an alleged deficiency balance owed, which Richard has not paid.

On September 26, 1989, Richard and Sandra S. Ham executed and delivered a promissory note in the amount of $55,544.79 to National. This note was due and payable on November 30. Richard and Sandra defaulted on this note.

On November 5, 1990, Richard filed a petition in the U.S. Bankruptcy Court for the District of Nebraska. Pursuant to 11

U.S.C. § 362 (1988 & Supp. V 1993), National was subject to an automatic stay enjoining it from either commencing or continuing any lawsuit in order to enforce its rights. The stay remained in effect until the bankruptcy petition was dismissed on February 13, 1992.

On February 22, 1994, Richard and Sandra filed a second petition in the bankruptcy court, and National was again subject to an automatic stay until the bankruptcy petition was dismissed on December 28. The combined period for which National was subject to the automatic stays by the bankruptcy court amounted to 774 days.

On July 14, 1995, National sued Richard to recover amounts due under the PMRP agreement and the level payment note. On the same date, National sued Richard and Sandra to recover on the September 26, 1989, promissory note. In response, Richard and Sandra asserted the affirmative defense of the statute of limitations.

On September 16, 1997, National obtained a summary judgment against Richard and Sandra in its action on the promissory note. National also obtained a summary judgment regarding the PMRP agreement and a partial summary judgment on the level payment note. The district court concluded that the applicable statute of limitations for the actions against Richard and Sandra was tolled during the 774-day pendency of the bankruptcy stays. Richard appeals from the summary judgment orders regarding the PMRP agreement and the promissory note.

## ASSIGNMENTS OF ERROR

In both cases, which have been consolidated on appeal, Richard asserts that the district court erred in (1) finding that the time in which National had to commence suit was tolled while he was under the protection of the federal Bankruptcy Code, (2) finding that there were no issues of material fact in dispute as to whether National's claim was time barred, and (3) granting summary judgment.

## ANALYSIS

The issue presented is whether the district court erred in concluding as a matter of law that National's claims were not barred by the statute of limitations. When reviewing a question

of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Wood v. McGrath, North, ante* p. 109, 589 N.W.2d 103 (1999).

## PMRP AGREEMENT

The statute of limitations for an action on a written contract is 5 years. Neb. Rev. Stat. § 25-205 (Reissue 1995). We first address the July 5, 1989, PMRP agreement. In the absence of a contractual provision allowing acceleration, where an obligation is payable by installments, the statute of limitations runs against each installment individually from the time it becomes due. See, *Bauers v. City of Lincoln*, 245 Neb. 632, 514 N.W.2d 625 (1994); *Becker v. Lammers*, 193 Neb. 839, 229 N.W.2d 557 (1975). Where a contract contains an option to accelerate, the statute of limitations for an action on the whole indebtedness due begins to run from the time the creditor takes positive action indicating that he has elected to exercise the option. See, *State Security Savings Co. v. Pelster*, 207 Neb. 158, 296 N.W.2d 702 (1980); *Hatch v. Ely*, 131 Neb. 882, 270 N.W. 480 (1936); *Santini v. Fritkin*, 240 Md. 542, 214 A.2d 578 (1965).

National's PMRP agreement with Richard provided that if any payment was not made when due, all sums due and owing to National "shall immediately become due and payable, without demand or notice." Regarding such a "self-operative" acceleration clause, authorities are split as to whether the statute of limitations begins to run automatically upon default or whether it begins to run upon affirmative election by the creditor to accelerate. See 51 Am. Jur. 2d *Limitation of Actions* § 133 (1970). Here, if the statute of limitations began to run automatically upon default, then the statute began to run in January 1990, when Richard first missed a monthly payment. If this is the case, then National failed to bring its action within 5 years. On the other hand, if affirmative action is necessary to accelerate the whole indebtedness due, then the statute of limitations did not begin to run until August, when National prepared and delivered a written demand informing Richard it was exercising its right to demand immediate payment of the whole indebtedness due. If the latter is true, National's action was brought within the 5-year limitations period.

In *Moorehead v. Hungerford*, 110 Neb. 315, 193 N.W. 706 (1923), we stated that a provision in a mortgage given to secure a promissory note stating that the whole debt would immediately become due if any interest payment was not made was permissive only and not self-operative. See, also, *McCarthy v. Benedict*, 89 Neb. 293, 131 N.W. 598 (1911); *Lowenstein v. Phelan*, 17 Neb. 429, 22 N.W. 561 (1885).

Courts in other jurisdictions have opined that the better-reasoned authorities hold that an acceleration provision, although absolute in its terms, is not self-operative. See, e.g., *Fogle v. King*, 132 W. Va. 224, 51 S.E.2d 776 (1948). The rationale is that the debtor, by defaulting, should not be permitted to force the maturation of an indebtedness which was intended as an investment for a given period. In *Grozier v. Post Publishing Co.*, 342 Mass. 97, 172 N.E.2d 266 (1961), the court stated that to hold such an acceleration provision to be self-operative would prohibit the creditor from exercising leniency toward the debtor.

We therefore conclude that National's cause of action for the unpaid balance of the PMRP agreement accrued when National gave written notice of its election to accelerate the unpaid balance due. Thus, National's action on the PMRP agreement was brought within the 5-year statute of limitations, and we affirm the district court's order granting summary judgment as to the PMRP agreement.

## PROMISSORY NOTE

Richard defaulted on the September 26, 1989, promissory note on November 30, and National clearly did not commence its action within 5 years of the default. National argues, however, that the district court was correct in its conclusion that the 5-year statutory period was extended or tolled by the 774 days during which National was subject to the bankruptcy stays involving Richard and Sandra.

Conversely, Richard argues that the statute of limitations was not tolled by the bankruptcy stays. He asserts that pursuant to 11 U.S.C. § 108(c) (1994), National was allowed 30 days to file suit after it received notice of the dismissal of the bankruptcy, and that because the evidence is unclear as to when National received notice of the stay's termination, the district court erred in granting summary judgment in favor of National.

We have not previously determined whether the applicable statute of limitations is tolled day for day by the period of time during which a creditor is subject to a stay in bankruptcy.

Section 362 provides in relevant part:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of—
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title.

Section 108(c) provides:

> [I]f applicable nonbankruptcy law . . . fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor . . . and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) 30 days after notice of the termination or expiration of the stay under section 362 . . . .

Our reading of §§ 108(c)(2) and 362 indicates that neither section tolls the applicable statute of limitations.

In *In re Baird*, 63 B.R. 60 (Bankr. W.D. Ky. 1986), the court held that the pendency of the bankruptcy proceedings for several months did not have the effect of prolonging a state statute of limitations for an equivalent length of time after the bankruptcy was dismissed. The court stated that § 108 did not in and of itself suspend the state statute of limitations. Rather, § 108(c) extends the statute of limitations for 30 days after the automatic stay expires by operation of law or is lifted by order

of the court. The court explained that the reference in § 108(c)(1) to the "'suspension of such period'" (emphasis omitted), *In re Baird*, 63 B.R. at 62, referred not to the operation of bankruptcy law, but to other specialized "'suspension'" statutes, such as the Internal Revenue Code, *id.* at 63. In support of its conclusion, the court quoted the following legislative history of § 108(c):

"Subsection (c) extends the statute [of] limitations for creditors. Thus, if a creditor is stayed from or continuing an action against the debtor because of the bankruptcy case, then the creditor is permitted an additional 30 days after notice of the event by which the stay is terminated, whether that event be relief from the automatic stay under proposed 11 U.S.C. § 362 or 1301, the closing of the bankruptcy case (which terminates the stay), or the exception from discharge of the debts on which the creditor claims.

. . . .

"The House amendment adopts Section 108(c)(1) of the Senate amendment which expressly includes any special suspensions of statutes of limitation periods on collection outside bankruptcy when assets are under the authority of a court. For example, Section 6503(b) of the Internal Revenue Code suspends collection of tax liabilities while the debtor's assets are in the control or custody of a court, and for six months thereafter. . . ."

(Emphasis omitted.) *In re Baird*, 63 B.R. at 62-63.

Similarly, the court in *Grotting v. Hudson Shipbuilders, Inc.*, 85 B.R. 568 (W.D. Wash. 1988), concluded that there is no language in either the automatic stay provision of § 362 or the extension of time provision of § 108(c) that suspends a statute of limitations from running. The court stated that the automatic stay provision of § 362 "merely prohibits a cause of action from being commenced" against a debtor, while the extension of time provision of § 108(c) "merely provides an extra 30 days to file a claim if the claims' limitation period expired before the automatic stay was lifted." *Grotting*, 85 B.R. at 569. The court explained that such interpretation of the federal Bankruptcy Code was especially reasonable in light of the fact the prede-

cessor statute expressly provided for the "suspension" of any statute of limitations during the pendency of the bankruptcy proceedings and that Congress could have similarly provided in the new statute. Moreover, the court explained that the interpretation that the applicable statute of limitations is not tolled by the automatic stay in bankruptcy "comports best with expeditious and fair administration of a bankrupt's estate. The parties have more certain knowledge of when claims will expire, and the potential claims period is not unduly extended because of the length—which may be great in complex cases—of the bankruptcy proceedings." *Grotting*, 85 B.R. at 570.

In *In re Confidential Investigative Consultants, Inc.*, 178 B.R. 739 (Bankr. N.D. Ill. 1995), the court explained that § 108(c) prevents a debtor from filing bankruptcy and then using the expiration of the limitations period during the bankruptcy stay as a complete defense. However, apart from the 30-day period under § 108(c)(2), this section by itself " 'does not provide for tolling of any externally imposed time bars . . . rather, this language merely incorporates suspension of deadlines that are expressly provided in other federal or state statutes.' " (Emphasis omitted.) *In re Confidential Investigative Consultants, Inc.*, 178 B.R. at 749 (quoting *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067 (2d Cir. 1993)). See, also, *Bennett v. U.S. Lines, Inc.*, 64 F.3d 62 (2d Cir. 1995); *Skywark v. Isaacson*, 202 B.R. 557 (S.D.N.Y. 1996); *In re Crysen/Montenay Energy Co.*, 166 B.R. 546 (S.D.N.Y. 1994); *Thurman v. Tafoya*, 895 P.2d 1050 (Colo. 1995); *Swartzman v. Harlan*, 535 So. 2d 605 (Fla. App. 1988); *J.T. Industrial Contractors, Inc. v. Hargis Railcar, Inc.*, 217 Ga. App. 679, 458 S.E.2d 702 (1995); *Weaver v. Hamrick*, 907 S.W.2d 385 (Tenn. 1995); *Hazel v. Van Beek*, 135 Wash. 2d 45, 954 P.2d 1301 (1998). But see, *In re Hunters Run Ltd. Partnership*, 875 F.2d 1425 (9th Cir. 1989); *In re Martin-Trigona*, 763 F.2d 503 (2d Cir. 1985); *Garbe Iron Works, Inc. v. Priester*, 99 Ill. 2d 84, 457 N.E.2d 422, 75 Ill. Dec. 428 (1983); *Major Lumber v. G & B Remodeling*, 817 S.W.2d 474 (Mo. App. 1991).

We note, however, that states are not precluded from granting more than the 30 days provided by § 108(c) or from providing for the tolling of an applicable statute of limitations period dur-

ing the pendency of a bankruptcy stay. In *Panzella v. Hills Stores Co.*, 171 B.R. 22 (E.D. Pa. 1994), the court explained that Congress explicitly allowed for state statutes or other applicable nonbankruptcy law to provide additional time for the plaintiff to file suit if the defendant was in bankruptcy. Likewise, in *Pettibone Corp. v. Easley*, 935 F.2d 120, 121 (7th Cir. 1991), the court stated, "Federal law assured the plaintiffs 30 days in which to pick up the baton; if states want to give plaintiffs additional time, that is their business."

Other courts have considered whether relevant state law provides for additional time to file suit beyond the 30-day period prescribed in § 108(c). For example, in *Rogers v. Corrosion Products, Inc.*, 42 F.3d 292 (5th Cir. 1995), the court held that neither the bankruptcy statute nor Louisiana law tolled the prescriptive period on the accident victim's claim during the period of the bankruptcy stay. The court so held despite its common-law doctrine that " '[n]o prescription runs against a person unable to bring an action.' " *Id.* at 294 n.2. The court explained that the common-law doctrine was based in equity, and it found no inequity in limiting the plaintiff's right to file suit to 30 days after termination of the stay when the statute had run during the stay and the plaintiff failed to obtain relief from the stay in the bankruptcy court.

In *Nativo v. Grand Union Co.*, 315 N.J. Super. 185, 717 A.2d 429 (1998), the court held that neither § 108(c) nor applicable common-law principles operated to toll the state's personal injury statute of limitations during the time the bankruptcy law's automatic stay provision was in effect. The court noted that there was no evidence that the defendant was in any way responsible for the plaintiff's late filing of the complaint.

Similarly, in *Hazel v. Van Beek, supra,* the court held that the state statutory 10-year lifespan for execution of a judgment was not tolled to account for the 6-month period of a bankruptcy stay. The court rejected the creditor's argument that the statute should be equitably tolled under state common law. While the stay prevented the creditor from enforcing her judgment during the period of the stay, it did not prevent her from enforcing the judgment during the statutory lifetime.

In *Thurman v. Tafoya*, 895 P.2d 1050 (Colo. 1995), the court held that state law provided no reason to toll the statute of limitations during the 432 days the defendants were in bankruptcy and the automatic stay was in effect. The court rejected the plaintiff's claim that the statute of limitations was tolled under the common-law doctrine of equitable estoppel.

In *Weaver v. Hamrick*, 907 S.W.2d 385 (Tenn. 1995), the court found no provision under state law which would toll the statutory lien enforcement period during a bankruptcy stay. The court noted that the applicable state statute mentioned tolling only during an appeal of the underlying judgment. The court concluded that any judgment creditor had three options: (1) move the bankruptcy court to lift the stay; (2) execute on the judgment after the bankruptcy proceedings terminate, if the period has not yet expired; or (3) execute on the judgment during the § 108(c) 30-day "grace period" following the lifting of the stay or termination of the bankruptcy proceeding.

In contrast, the court in *Peterson v. Texas Commerce Bank-Austin*, 844 S.W.2d 291 (Tex. App. 1992), held that the pendency of the federal bankruptcy proceeding tolled the applicable statute of limitations in a creditor's action to recover deficiency on a note. The court relied on state common law which had recently reaffirmed that " '[w]here "a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the time during which he is thus prevented should not be counted against him in determining whether limitations have barred his right." ' " *Id.* at 294.

In *Statewide Funding Corp. v. Reed*, 925 P.2d 578, 581 (Okla. App. 1996), the state's common law provided:

> "Where the character of legal proceedings is such that the law restrains one of the parties from exercising a legal remedy against another, the running of the statute of limitations applicable to the remedy is postponed, or if it has commenced to run, is suspended, during the time the restraint incident to the proceedings continues." . . .
> " '[W]henever a person is prevented from exercising his legal remedy by some paramount authority, the time during which he is thus prevented is not to be counted against

him in determining whether the statute of limitations has barred his right.' "

The court concluded that the statutory period for filing a motion for deficiency was tolled during the pendency of the bankruptcy stay.

In *Panzella v. Hills Stores Co.*, 171 B.R. 22 (E.D. Pa. 1994), the court relied upon a state statute to conclude that the limitations period for a products liability action was tolled during the bankruptcy stay. The statute provided: " 'Where the commencement of a civil action or proceeding has been stayed by a court or by statutory prohibition, the duration of the stay is not a part of the time within which the action . . . must be commenced.' " (Emphasis omitted.) *Id.* at 24.

In *Turner & Boisseau, Chtd. v. Lowrance*, 18 Kan. App. 2d 332, 335, 852 P.2d 517, 519 (1993), the relevant state statute provided: " 'Whenever the commencement of any action shall be stayed by an injunction of any court, the time during which such injunction shall be in force shall not be deemed any portion of the time limit for the commencement of such action.' " Under state common law, the term "injunction" had been interpreted broadly, and the court concluded that the applicable statute of limitations was tolled during the automatic stay in bankruptcy. See, also, *St. Joseph Development Corp. v. Sequenzia*, ___ Kan. App. 2d ___, ___, 968 P.2d 682, 684 (1998) (holding that dormancy period for recovery on judgment lien was tolled by bankruptcy stay, relying on state statute which stated that relevant time " ' "does not run during any period in which the enforcement of the judgment by legal process is stayed or prohibited" ' "); *Trustmark Nat. Bank v. Pike Co. Nat. Bank*, 716 So. 2d 618, 620 (Miss. 1998) (holding that statute of limitations was tolled where state statute provided that " 'the time during which the execution of a judgment or decree shall be stayed or enjoined by supersedeas, injunction or other process, shall not be computed as any part of the period . . . .' " (emphasis omitted)).

While there is no statutory law in Nebraska addressing the issue presented here, National argues that under Nebraska common law, the applicable statute of limitations should be tolled

for the period of time during which National was subject to the bankruptcy stays. In *First Nat. Bank of Plattsmouth v. Gibson*, 74 Neb. 236, 105 N.W. 1081 (1906), the creditor successfully litigated its right to set aside a conveyance as fraudulent, but because it was unable to recover from the resultant forced sale of the property, the creditor brought a later action in equity to reach the rents and profits from the land. We held that the latter action was not time barred, stating:

> In this action it was necessary to show that the land had been fraudulently transferred. No recovery could be had without the existence of that fact. While that question was being litigated in the courts, the statute of limitations as to any claim that depended upon the questions there in controversy would not run in favor of one party in that controversy and against the other.

*Id.* at 242, 105 N.W. at 1083.

In *Macke v. Jungels*, 102 Neb. 123, 166 N.W. 191 (1918), we held that it would be inequitable to allow the statute of limitations to run on a claim for damages during the pendency of an action enjoining the plaintiff from bringing suit on that claim.

In *Lincoln Joint Stock Land Bank v. Barnes*, 143 Neb. 58, 8 N.W.2d 545 (1943), defendants in a mortgage foreclosure appealed a decree of foreclosure in favor of the plaintiff. The foreclosure was commenced June 7, 1928. On December 17, 1930, the case was removed from the docket but remained pending with leave to reinstate pursuant to a federal court order restraining the plaintiff from proceeding further. The action was subsequently reinstated, and the defendants contended that the plaintiff was barred by the applicable statute of limitations. We concluded that the plaintiff having been restrained from proceeding further by a paramount authority, the period thereof should not be considered in computing the time for the statute of limitations to run, and that the plaintiff was not so barred.

The above cases were based upon equitable principles and are not directly applicable to the case at bar. Section 108(c) prevents a debtor from filing bankruptcy in order to let the statute of limitations run and then using the expiration of the limitations period as a defense. Section 108(c) provides an extra 30 days to file a claim if the claim expired before the automatic

stay was lifted or the bankruptcy was dismissed. We agree with those courts which have concluded that the 30-day period is a more sensible approach than a day-by-day tolling because it promotes certainty as to the statute of limitations. Therefore, we conclude as a matter of law that the stay in bankruptcy does not toll the statute of limitations relating to the written notes and obligations at issue.

Here, we find no inequity in requiring National to commence its action within 30 days following the termination or dismissal of the bankruptcy. Unlike situations which might require an equitable tolling of the statute of limitations, such as fraudulent concealment or equitable estoppel, the creditor subject to the bankruptcy stay is, by definition, aware of its potential claim against the debtor. At the very least, the creditor can prepare to file the suit during the pendency of the stay.

There is a material issue of fact as to whether National received notice of the termination of the stay or dismissal of the bankruptcy petition, or when in fact that occurred. Therefore, we reverse the district court's order granting summary judgment as to the promissory note and remand the cause for further proceedings.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.

STEPHAN, J., not participating.