vexatiously or for delay. We therefore deny Theresa's request for attorney fees on appeal.

## VI. CONCLUSION

For the reasons stated above, we affirm the county court's order as to the Second Codicil. However, we affirm as modified the court's order with respect to the appointment of a special administrator to reflect that Alice's request should have been dismissed without prejudice.

AFFIRMED AS MODIFIED.

---

VILLAGE OF FILLEY, NEBRASKA, APPELLEE AND CROSS-APPELLEE,
V. MARK SETZER AND KATHY SETZER, APPELLANTS, AND
THOMAS SETZER, APPELLEE AND CROSS-APPELLANT.

___ N.W.2d ___

Filed December 9, 2014.    No. A-13-356.

1. **Summary Judgment.** Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.

3. **Judgments: Final Orders: Appeal and Error.** A judgment rendered or final order made by the district court may be reversed, vacated, or modified for errors appearing on the record.

4. **Contracts: Guaranty: Limitations of Actions: Liability: Debtors and Creditors.** A statute of limitations begins to run against a contract of guaranty the moment a cause of action first accrues and a guarantor's liability arises when the principal debtor defaults.

5. **Contracts: Acceleration Clauses: Limitations of Actions: Debtors and Creditors.** In the absence of a contractual provision allowing acceleration, where an obligation is payable by installments, the statute of limitations runs against each installment individually from the time it becomes due. Where a contract contains an option to accelerate, the statute of limitations for an action on the whole indebtedness due begins to run from the time the creditor takes positive action indicating that the creditor has elected to exercise the option.

6. **Contracts: Acceleration Clauses: Limitations of Actions.** In the absence of a contractual provision allowing acceleration, where an obligation is payable by

installments, the statute of limitations runs against each installment individually from the time it becomes due.

7. **Affidavits.** Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

Appeal from the District Court for Gage County: Daniel E. Bryan, Jr., Judge. Affirmed.

John C. Hahn and Brent C. Stephenson, of Jeffrey, Hahn, Hemmerling & Zimmerman, P.C., L.L.O., for appellants.

Eric J. Adams and Thomas O. Ashby, of Baird Holm, L.L.P., for appellee Village of Filley.

Daniel E. Klaus, of Rembolt Ludtke, L.L.P., for appellee Thomas Setzer.

Moore, Chief Judge, and Irwin and Pirtle, Judges.

Pirtle, Judge.

## INTRODUCTION

The Village of Filley loaned money to HeatSource 1, Inc. (HeatSource), pursuant to a community development block grant program. Mark Setzer, Kathy Setzer, and Thomas Setzer (collectively appellants) were guarantors on the loan. HeatSource defaulted on the loan, and Filley filed suit against appellants. The district court for Gage County granted partial summary judgment in favor of Filley, finding that Filley's cause of action was not barred by the statute of limitations, and subsequently found appellants were liable to Filley in the amount of $116,469.67. Mark and Kathy appealed, and Thomas cross-appealed. Based on the reasons that follow, we affirm.

## BACKGROUND

In February 2002, the State of Nebraska Department of Economic Development (Department) approved Filley and HeatSource for a community development block grant in the amount of $242,400. Of those funds, $236,440 was to be loaned from Filley to HeatSource, and in exchange for the

loan, HeatSource was to provide 12 full-time job positions for 2 years in Filley.

On April 25, 2002, HeatSource and appellants, individually, signed and delivered a promissory note to Filley in the principal amount of $236,440, interest free, to be paid in 120 consecutive monthly payments in the amount of $1,970.33 each. The Department had no direct role in the making or the administration of the promissory note; Filley was the administrator and holder of the note. HeatSource and appellants, individually, also entered into a loan agreement with Filley on April 25, 2002, which further outlined the parties' rights and obligations.

Although appellants signed and were obligated under the terms of the promissory note, they also personally guaranteed payment and performance of HeatSource's indebtedness to Filley by signing a guaranty dated April 29, 2002.

On November 4, 2003, Thomas transferred his interest in HeatSource to Mark and Kathy and/or HeatSource. In 2004, Filley learned that Thomas had transferred his interest and was no longer affiliated with the company. The promissory note contained an acceleration clause pertaining to the transfer of ownership in HeatSource which stated, "It is further understood and agreed that, in the event of the sale or transfer of any ownership interest in the Borrower, then this note shall become immediately due and payable." Filley did not take any action to collect the full amount due on the note.

Subsequently, HeatSource defaulted on its obligations owed to Filley pursuant to the promissory note by failing to make scheduled payments on the promissory note. The last payment Filley received was on June 8, 2009. The promissory note also had an acceleration clause in regard to a default in payments, which provided that "if there is a default in the payment of the debt, and it is not cured within Fifteen (15) days, or if default is made under the terms of the Loan Agreement . . . the principal sum, with accrued interest, will become due and collectible."

On November 18, 2011, Filley filed a complaint against appellants alleging that HeatSource was "in default of its obligations owed to Village of Filley pursuant to the Note for,

among other things, failure to make scheduled payments on said Note." Filley declared the note, and all amounts owed based on the note, due and payable in full. The complaint further alleged that HeatSource owed Filley the principal amount of $116,469.67, plus interest, and that pursuant to the terms of the note and guaranty, appellants were liable to Filley for the principal amount and interest.

Mark and Kathy filed an answer with a general denial as to the claim and alleged a number of affirmative defenses, including Filley's failure to mitigate damages and exhaust administrative remedies. Mark and Kathy were later granted leave to file a first amended answer to affirmatively allege that Filley's cause of action was barred by the statute of limitations.

Thomas filed a separate answer and subsequently a first amended answer, denying Filley's allegations and asserting a number of affirmative defenses, including failure to mitigate damages, failure to exhaust administrative remedies, and expiration of the statute of limitations. Thomas also filed a crossclaim against Mark and Kathy asking that if he is found liable to Filley on the promissory note and/or guaranty, that judgment be entered in his favor and against Mark and Kathy for the full amount of his liability to Filley.

On March 8, 2012, Filley filed a motion for summary judgment. At the summary judgment hearing, Filley submitted three affidavits in support of its motion: an affidavit and supplemental affidavit of David A. Norton, the village clerk for Filley, and an affidavit of Bob Doty, the housing program manager for the Department. In opposition to the motion for summary judgment, Thomas submitted his own affidavit, and Mark and Kathy submitted their own affidavits.

Following the summary judgment hearing, the trial court entered an order on July 5, 2012, granting partial summary judgment in favor of Filley. The court determined that Filley's claim was not barred by the statute of limitations, because the cause of action arose on November 18, 2011, when Filley filed its complaint asserting that it was accelerating the amount due on the note. The court also determined that Filley mitigated its damages and had exhausted all administrative remedies

available to it. The court determined that a money judgment would be entered in favor of Filley and against appellants jointly and severally on their note and guaranty, but that the amount appellants owed Filley was a genuine issue of material fact left to be determined. Trial was scheduled for October 18, 2012, at which time the court would make a final determination on the merits of the case.

Subsequently, the parties submitted a joint stipulation of facts in lieu of having a trial, which joint stipulation was received into evidence. HeatSource's payment history was attached to the joint stipulation, showing the date and amount of each payment HeatSource made on the promissory note. The draw history was also attached to the joint stipulation, reflecting the date and amount of each draw HeatSource made under the loan agreement. The joint stipulation stated that HeatSource made the final draw on March 26, 2004, and that under the terms of the note and loan agreement, HeatSource agreed that the first monthly installment was due and payable within 30 days of the draw.

Based on the joint stipulation, the court entered an order finding that appellants were jointly and severally liable to Filley in the amount of $116,469.67.

The trial court subsequently ruled on Thomas' cross-claim, finding that Mark and Kathy are jointly and severally liable to Thomas for any and all amounts that Thomas pays on the judgment entered in favor of Filley.

## ASSIGNMENTS OF ERROR

Mark and Kathy assign, restated, that the trial court erred in (1) granting partial summary judgment in favor of Filley, concluding that Filley's claim was not barred by the statute of limitations, and (2) finding that Filley had mitigated its damages and exhausted its administrative remedies.

On cross-appeal, Thomas assigns that the trial court erred in (1) finding that Filley's claim was not barred by the statute of limitations, (2) finding that Filley had mitigated its damages and exhausted its administrative remedies, (3) finding that the only genuine issue of material fact remaining was the amount owed under the promissory note, and (4) granting a

monetary judgment in favor of Filley. Thomas, however, does not set forth any arguments in support of the errors assigned in his brief. Rather, he relies solely on "the reasons stated in Appellant's brief" to support his stated errors. Accordingly, we do not address Thomas' assignments of error that were not also assigned by Mark and Kathy. See *Dowd Grain Co. v. County of Sarpy*, 19 Neb. App. 550, 810 N.W.2d 182 (2012) (in order to be considered by appellate court, alleged errors must be both specifically assigned and specifically argued in brief of party asserting error).

## STANDARD OF REVIEW

[1] Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Harris v. O'Connor*, 287 Neb. 182, 842 N.W.2d 50 (2014).

[2] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id.*

[3] A judgment rendered or final order made by the district court may be reversed, vacated, or modified for errors appearing on the record. Neb. Rev. Stat. § 25-1911 (Reissue 2008).

## ANALYSIS

[4] Appellants first assign that the trial court erred in granting partial summary judgment in favor of Filley, finding that Filley's cause of action was not barred by the statute of limitations. Pursuant to Neb. Rev. Stat. § 25-205 (Reissue 2008), the applicable statute of limitations is 5 years: "[A]n action upon a specialty, or any agreement, contract, or promise in writing, or foreign judgment, can only be brought within five years." Appellants contend that Filley's cause of action accrued in November 2003, when Thomas transferred his ownership interest in HeatSource to Mark and Kathy and/or HeatSource. If appellants' contention is correct, the 5-year

statute of limitations for a cause of action against appellants would have expired in November 2008 for the note and guaranty. See *Production Credit Assn. of the Midlands v. Schmer*, 233 Neb. 749, 448 N.W.2d 123 (1989) (statute of limitations begins to run against contract of guaranty the moment cause of action first accrues and guarantor's liability arises when principal debtor defaults).

In regard to Thomas' transfer of ownership, the promissory note provides: "[I]n the event of the sale or transfer of any ownership interest in the Borrower, then this note shall become immediately due and payable." Appellants contend that the language in the note is self-operative. That is, at the moment Thomas transferred his ownership, the note's acceleration clause was invoked and the remaining loan balance became immediately due and payable. Appellants argue that because HeatSource did not immediately satisfy the outstanding loan balance, HeatSource has been in default under the terms of the promissory note since 2003.

However, Nebraska case law is contrary to appellants' argument. In *National Bank of Commerce v. Ham*, 256 Neb. 679, 592 N.W.2d 477 (1999), the Nebraska Supreme Court held that an acceleration provision, although absolute in its terms, is not self-operative. In *Ham*, a borrower entered into a personal money reserve plan agreement with National Bank of Commerce (NBC). The agreement required the borrower to repay, in monthly installments, any money lent to him. The agreement in *Ham* also contained an acceleration clause which provided that if any payment was not made when due, all sums due and owing to NBC "'shall immediately become due and payable, without demand or notice.'" 256 Neb. at 682, 592 N.W.2d at 480. Payments were missed in January, March, and May 1990, and a representative of NBC sent a letter to the borrower on August 15, 1990, informing him that NBC was exercising its option to accelerate. On July 14, 1995, NBC sued the borrower to recover the amount due under the agreement.

[5] On appeal, the Supreme Court in *Ham* held:

In the absence of a contractual provision allowing acceleration, where an obligation is payable by installments,

the statute of limitations runs against each installment individually from the time it becomes due. . . . Where a contract contains an option to accelerate, the statute of limitations for an action on the whole indebtedness due begins to run from the time the creditor takes positive action indicating that [the creditor] has elected to exercise the option.

256 Neb. at 682, 592 N.W.2d at 479-80. The court concluded that NBC's claim against the borrower was not barred by the 5-year statute of limitations because the statute of limitations began to run in August 1990, when NBC gave written notice of its election to accelerate the unpaid balance due.

Appellants argue that *National Bank of Commerce v. Ham, supra*, can be distinguished because it involved an action by a creditor against a borrower, rather than an action on a guaranty as in the present case. However, in *City of Lincoln v. Hershberger*, 272 Neb. 839, 725 N.W.2d 787 (2007), the Nebraska Supreme Court held that although that case involved guarantors asserting a statute of limitations defense, as opposed to the original debtor, the principles relied on in *National Bank of Commerce v. Ham, supra*, apply equally to the original debtor and the guarantor of the same debt. *City of Lincoln v. Hershberger, supra*, involved an installment contract with an optional acceleration clause. The court noted that the statute of limitations for an action on the whole indebtedness due begins to run from the time the creditor takes positive action indicating that it has elected to exercise the acceleration option. The court concluded that the statute of limitations began to run on the city's claim against the debtor on the date the city sent a letter to the guarantors indicating the city's intent to exercise its right to accelerate. The court further explained that because the day the letter was sent was the date of the debtor's default for purposes of the city's action against the debtor, it was also the date upon which the statute of limitations began to run on each guaranty.

The present case is similar to *National Bank of Commerce v. Ham*, 256 Neb. 679, 592 N.W.2d 477 (1999), and *City of Lincoln v. Hershberger, supra*, in that it involves an

installment contract with an optional acceleration clause. It is also similar to *Hershberger* in that it is the guarantors' asserting a statute of limitations defense. Although the acceleration clause upon which appellants rely for their statute of limitations defense is based on a transfer of ownership rather than a default in payment as in *Ham* and *Hershberger*, the same principles set forth in *Ham* and *Hershberger* apply. That is, where a contract contains an option to accelerate, the statute of limitations for an action on the whole indebtedness due begins to run from the time the creditor takes positive action indicating that the creditor has elected to exercise the option. *National Bank of Commerce v. Ham, supra*.

Accordingly, the acceleration clause at issue was not self-operative and Filley's cause of action did not accrue in November 2003, when Thomas transferred his ownership interest in HeatSource to Mark and Kathy and/or HeatSource. Filley's cause of action would not accrue until it took some action to indicate it intended to exercise the option to accelerate the note. Filley has never given notice of its election to accelerate due to Thomas' transferring his ownership. The only action Filley has taken to indicate it was accelerating the note was its filing of the complaint against appellants on November 18, 2011, and the complaint is not based on the transfer of ownership. Rather, the complaint is based on HeatSource's being in default of its obligations owed to Filley for failing to make scheduled payments on the note, which stems from a different acceleration clause within the promissory note as previously set forth. Regardless of which acceleration clause the complaint was based on, the filing of the complaint was the first action taken by Filley to indicate it was accelerating the note. That being so, Filley's cause of action based on Thomas' transfer of ownership did not accrue in November 2003 and the statute of limitations did not expire in November 2008.

Appellants further argue that even if the acceleration clause for transfer of ownership was not self-operative, the statute of limitations precluded Filley from recovering installment payments that were due and owing for more than 5 years prior to the commencement of the case. Appellants argue that the

monthly payments were all separate payments that accrued at different times and that therefore, the statute of limitations would have expired on some of the payments before Filley commenced its suit.

[6] Based on *Ham* and *Hershberger*, this argument has no merit. Both cases involved installment contracts, and in both cases, the court held that "'[i]*n the absence of a contractual provision allowing acceleration*, where an obligation is payable by installments, the statute of limitations runs against each installment individually from the time it becomes due.'" *City of Lincoln v. Hershberger*, 272 Neb. 839, 844, 725 N.W.2d 787, 791 (2007) (emphasis supplied), quoting *National Bank of Commerce v. Ham*, 256 Neb. 679, 592 N.W.2d 477 (1999). As discussed, the promissory note in this case is an installment contract with an acceleration provision. Therefore, the statute of limitations does not run against each installment individually.

The trial court correctly determined that Filley's cause of action on the whole indebtedness due under the note began to run on November 18, 2011, when Filley took positive action to accelerate the debt. Therefore, the trial court did not err in granting partial summary judgment in favor of Filley, finding that Filley's cause of action was not barred by the statute of limitations.

Appellants next assign that the trial court erred in finding that Filley had mitigated its damages and exhausted its administrative remedies. These findings were made as part of the partial summary judgment granted in Filley's favor. The trial court found that Filley presented sufficient evidence to establish that it had mitigated its damages and exhausted its administrative remedies. It further found that the burden shifted to appellants and that they failed to present evidence that Filley failed to exhaust its administrative remedies or mitigate its damages.

In regard to administrative remedies, Filley presented an affidavit of Doty, the housing program manager for the Department, who is a custodian of the Department's documents

and has personal knowledge of the interaction between the Department, Filley, and appellants. Doty stated:

> Prior to this lawsuit, [Filley] exhausted administrative procedures or remedies, if any, it had available to it through the Department. The Department has no objection to the filing of the Complaint in this action by [Filley] or to any effort by [Filley] under state law to see a judgment against [appellants].

Filley also presented an affidavit of Norton, the village clerk of Filley, who stated that there were not any administrative requirements of the Department that must be satisfied or completed as a precondition to Filley's filing a complaint against appellants.

Appellants did not present any evidence to counter that presented in Doty's or Norton's affidavits and failed to present any evidence that Filley had administrative remedies that it failed to pursue. Accordingly, the trial court did not err in finding that Filley had exhausted its administrative remedies.

In regard to Filley's mitigation of damages, Doty's affidavit states that before the lawsuit was filed by Filley "there were no steps to [his] knowledge that [Filley] was required to or recommended to take with the Department to somehow mitigate the unpaid balance of the Note and the Guaranty or reduce damages to [Filley] from the failure of [appellants] to pay." Norton's affidavit states that "[Filley] took all steps necessary to diminish or reduce its damages through the Department."

Appellants contend, however, that Filley could have retained the note proceeds, thereby mitigating its damages, if it had submitted additional documents to the Department. The affidavits of Mark and Kathy both state that the community development block grant contract between the Department and Filley provided Filley the opportunity to retain HeatSource's payments made on the note by submitting notice and a plan for the reuse of the program income for economic development activities and by obtaining approval of the plan from the Department by certain deadlines. If the deadlines were not met,

then the payments that were received from HeatSource were to be returned to the Department.

[7] Appellants contend that Filley failed to take the steps necessary to retain the program income. Specifically, Mark and Kathy's affidavits state that

> upon information and belief, [Filley] failed to obtain the Department's approval for a reuse program and was forced to return the program proceeds to the Department. Had [Filley] acted reasonably and prudently, it would have obtained approval of a reuse program, kept the program proceeds, and reduced its claim for damages.

Appellants' claim that Filley could have taken steps to retain appellants' payments on the note and did not do so is based "upon information and belief" of Mark and Kathy and not upon personal knowledge. Appellants do not present actual knowledge or other evidence to support their conclusion that Filley did not obtain the Department's approval for a reuse program. See Neb. Rev. Stat. § 25-1334 (Reissue 2008) (supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that affiant is competent to testify to matters stated therein). As such, appellants failed to produce any competent evidence to contradict Filley's evidence that it mitigated its damages. The record supports the trial court's determination that Filley mitigated its damages.

## CONCLUSION

We conclude the district court did not err in granting partial summary judgment in favor of Filley, finding that Filley's cause of action was not barred by the statute of limitations and that Filley had mitigated its damages and exhausted its administrative remedies. Accordingly, the district court's $116,469.67 judgment in favor of Filley and against appellants is affirmed.

Affirmed.